Cate *v.* Cranor, Executor, and Others.

---

## CATE *v.* CRANOR, Executor, and Others.

STATUTES.—*Construction of.*— *Words and Phrases.*—The definitions of words and phrases in section 797 of the code are applied only in the construction of statutes, and not of wills or private instruments.

WILL.—*Construction of.*—A clause of a will was as follows: "My further will and desire is that my executors sell all of my property not above named, and the proceeds, after paying all my just debts and the above named bequests, be divided amongst my sons A., B., C., D., and E., and my daughters F., G., H., and I."

*Held,* that where the instrument, considered as a whole, indicated that it was the intention of the testator to dispose of his entire estate, or left his intention in this regard in doubt, this clause would dispose of money and the avails of promissory notes and other claims held by the testator at his death, and real estate acquired by him after the execution of the will and owned by him at his decease.

SAME.—Any construction which will result in partial intestacy is to be avoided, unless the language of the will compels it.

APPEAL from the Wayne Common Pleas.

This was a suit by Cate, the appellant, against the executor and heirs at law of Joshua Cranor, deceased.

The complaint was in two paragraphs. It was averred in the first that the appellant was entitled to an equal tenth of a large amount of money and notes belonging to the estate of said decedent, and undisposed of by his will, and which had descended under the law to the appellant and the appellees in equal proportions; that said notes had been reduced to money, and the amount was in the hands of the executor, ready for distribution, and that the executor had refused to account to the appellant, &c.

The second paragraph alleged that the decedent made his last will and testament, a copy of which was made part of this paragraph, which, after his death, was duly proved and entered of record; that at the time of making said will the testator was possessed of money to the amount of eleven thousand dollars, which afterwards he invested in certain real estate described, of which he died seized; that thereby the testator designed to revoke, and did revoke, said will as to said sum of eleven thousand dollars, and that said real estate, under the circumstances, did not pass under said will to the legatees there named, but descended to the decedent's heirs at law, as one of whom appellant claimed partition.

The appellees filed the same answer to both of these paragraphs, setting up the will made by the decedent, and claiming that according to its terms the appellant took no part of the money, notes, or real estate.

A demurrer to this answer was overruled, and this is assigned as error.

FRAZER, J.—This case calls for an interpretation of a clause of the testator's will, which is as follows:

"My further will and desire is, that my executors sell all of my property not above named, and the proceeds, after paying all my just debts and the above named bequests, be divided amongst my sons Thomas, Stephen, William, Moses,

and Milo, and my daughters Sarah, Anna, Hannah, and Amanda."

The appellant was a grandson of the testator, and claims that the foregoing clause does not dispose of money and the avails of promissory notes and other claims held by the testator at the time of his death, and that in such assets he is entitled to share. We do not find ourselves able to concur in that view of the subject. The phrase "all my property" is exceedingly comprehensive. We do not place any reliance upon the definitions cited from the statute (2 G. & H. 336, sec. 797), for these are applied only in the construction of statutes, and not of wills or private instruments. But the term "property" had quite as broad a signification long before our legislature turned its attention to lexicography; and embraced as well the right which one has to things in action as to those in possession, including things both real and personal, promissory notes and money. This is not controverted by the appellant, but it is contended that the direction of the will to "sell all my property" shows that the testator used the word "property" in a more limited sense, inasmuch as it is not usual or prudent to sell money or promissory notes, and it is not to be supposed that he meant to require so foolish and unusual a thing; that it is only the proceeds of property directed to be sold which is disposed of by the clause, and consequently as to money and notes the case is as if no will had been made.

It must be conceded that there is at least much plausibility in the appellant's argument. But we think it is unsound. The only legitimate office of construction in the case is to ascertain the testator's intention. Did he mean to dispose of the whole estate? That he did seems to us to be strongly indicated by the part of the will above set out; for it must be remembered that promissory notes and other evidences of debt, and even money, are capable of sale and transfer. Gold and silver coin are now articles of very extensive traffic, and notes and bonds, if they had long to run

before maturity, might, with great propriety, be directed to be sold to avoid delay in the settlement of an estate. It will be seen, therefore, that the argument based upon the improbabilty of an intention to sell such property does not rest upon a sure foundation. Nor is it supported by authority. *Hearne* v. *Wigginton*, 6 Mad. 119, is the other way, and much in point. There the language of the will was: "All my other effects I will to James Hearne, to be sold for his benefit." Money constituted part of the estate not otherwise disposed of. The VICE-CHANCELLOR said, " It is uncertain, at the making of the will, what the testator's property may consist of at his death, and the direction to sell implies only a general intention on the part of the testator that his residuary property shall be converted or collected for the benefit of his residuary legatee." But there are other parts of the will which greatly strengthen the conclusion that the testator intended to dispose of his whole estate. The appellant and the appellees were the heirs at law, entitled to take in equal shares any portion of the estate not disposed of. Certain sums of money or specific property are given to several of the appellees absolutely. To the appellant is given the sum of one hundred dollars when he arrives at twenty-one years of age, with a proviso that if he shall die before reaching that age, then this sum mentioned shall be divided amongst the other heirs. Then follows the clause in question. Now, it is almost past belief that the testator, having provided that the small bequest of one hundred dollars to the appellant should lapse in case the latter died during minority, should yet leave a large estate (several thousand dollars) to go to the appellant absolutely by partial intestacy. It is difficult to imagine any intelligent purpose which would have prompted the annexing of such a condition to the bequest under such circumstances.

Any construction of a will which will result in partial intestacy is to be avoided, unless the language of the will compels it; for the very fact of making a will is strong evidence of the testator's purpose to dispose of his whole es-

tate. 2 Redf. Wills, 442. If this is a doubtful case, therefore, the decision would be against the appellant. But we are not prepared to say that the language of the will gives rise to serious doubt, when the whole instrument is considered.

It seems to us that what has been said applies as well to real estate acquired by the testator after the execution of the will, as to money and promissory notes. We perceive nothing in the statute of wills which requires the application of any different rule.

The judgment is affirmed, with costs.

*J. B. & J. F. Julian,* for appellant.

*W. A. Peele,* and *J. P. Siddall,* for appellees.