SKINNER ET AL. *v.* SPANN, EXECUTOR.

[No. 21,583.   Filed February 21, 1911.   Rehearing denied June 1, 1911.]

1.   WILLS.—*Construction.—Avoidance of Partial Intestacy.*—A will should be construed so as to avoid partial intestacy unless the language thereof compels such a construction.   p. 683.

2.   WILLS.—*Partial Intestacy.—Presumptions.*—The execution of a will raises a strong presumption that the testator intends thereby to dispose of his entire estate, unless such intention is rebutted by the language of the will or by other evidence.   p. 684.

3.   WILLS.—*Construction.—Intention.*—A will should be so construed as to carry out the testator's intention, provided that can be done without contravening public policy or some inflexible rule of law.   p. 684.

4.   WILLS.—*Intention.—How Determined.*—In ascertaining the intention of the testator all parts of the will must be considered, and, when necessary, the circumstances of its execution.   p. 684.

5.   WILLS.—*Language.—Construction.*—Where possible, all language in a will must be given effect.   p. 684.

6. WILLS.—*Construction.*—*Rules.*—Rules for the construction of a will are intended to assist the court in determining the testator's intention, where such intention is not clearly disclosed by the language used. p. 685.

7. WILLS.—*Scriveners.*—*Presumptions.*—Naught appearing to the contrary, the presumption is that the testator wrote his own will. p. 685.

8. WILLS.—*Words.*—*Presumptions.*—The presumption is that the words in a will were used in their legal sense, unless some language or provision rebuts such presumption. p. 686.

9. WILLS.—*Intention.*—*Disposition of Entire Property.*—*Language.* —A will executed by a childless husband having as living blood relatives one sister and several nephews and nieces, in form: "I * * * do hereby declare the following disposition of my property to be my last will: Item No. 1. I give and bequeath to my wife * * * all my personal property remaining after the payment of my debts, to be her absolute property. Also all rents and profits arising from my real estate not otherwise disposed of in this will for her use and benefit during her life. * * * Item No. 2. Upon the death of my wife I hereby direct that all of said property referred to in the first item of this will as·devised to her for her own use and benefit during her life [shall be given to certain persons]. Item No. 3. I give and devise to my sister [certain real estate]. If she shall assert any claim against my estate * * * this devise and bequest is to be void, and the property described in this item shall then be disposed of under the provision of item first of this will," shows that the testator intended to dispose of all his property. pp. 686, 700, 703.

10. WILLS.—*Devises of Rents and Profits.*—"*For her Use and benefit During Her Life.*"—A devise to testator's widow of "all rents and profits arising from [testator's] real estate * * * for her use and benefit during her life," gives her a life estate in such real estate. pp. 687, 699.

11. WILLS.—*Devises.*—*Powers.*—*Implications.*—A will devising to testator's widow "all rents and profits arising from [testator's] real estate not otherwise disposed of in this will for her use and benefit during her life," and providing that if such devise should "be insufficient for her comfortable maintenance and support· she is hereby authorized and empowered to dispose of, sell and convey so much of [testator's] real estate and appropriate the proceeds thereof as may be necessary for her * * * support;" also giving her the right "to sell and convey any * * * real estate" and "invest the proceeds as she may think best for the betterment of the estate," implies that testator intended to

give the widow a life estate in all his land not specifically devised. p. 690.

12. WILLS.—*Devises.*—*Implied.*—A will which in item one devises "all rents and profits arising from [testator's] real estate not otherwise disposed of in this will for her use and benefit during her life," and which in item three devises certain real estate to testator's sister, must be construed as showing an intention in item one to except therefrom the devise set out in item three thereof. p. 691.

13. WILLS. — *Construction.* — *Implication.* — *Remainders.*—A will that in item one devises to testator's widow "all rents and profits arising from [testator's] real estate not otherwise disposed of in this will for her use and benefit during her life," and, in item two thereof, devises "all of said property referred to in the first item of this will as devised to her for her own use and benefit during her life, which shall be remaining," to remaindermen, devises the fee simple title in such land to such remaindermen. pp. 692, 703, 705.

14. WILLS.—*Specific Bequests.*—*Residue.*—*Ejusdem Generis.*—A will bequeathing to various legatees a great number of general and specific legacies and concluding with a direction to the executor "to sell all the remainder of [testator's] household furniture, chattels and stock * * * and to convert all other personal property which [testator] may possess * * * into money and divide the same equally between" two home mission boards, does not restrict such residuary legacies, under the doctrine of *ejusdem generis*, to the residue remaining from the sale of such household furniture, chattels and stock, but makes such boards general residuary legatees of all the personal estate of every description, including money on hand. pp. 692, 705.

15. WILLS.—*"Personal Property."*—The words "personal property," as used in a will directing the executor "to convert all other personal property into money," embrace all goods, chattels, notes, bonds, mortgages, choses in action and money. p. 697.

16. COSTS.—*Motion to Retax.*—*Judgment.*—In the absence of a motion to tax or retax costs in the trial court, no question as to the taxation thereof can be presented on appeal. pp. 698, 705.

17. WILLS.—*Devises.*—*Words of Inheritance.*—In a devise, the word "heirs," or any other legal word of inheritance, is unnecessary in order to pass the fee-simple title to the devisee, the common-law rule, that a general devise of real estate which does not define the interest to be taken by the devisee, passes only a life estate, unless it affirmatively appears from the will that a greater estate was intended, being materially modified and the testator's intention made controlling by §3123 Burns 1908, §2567

R. S. 1881, providing that "every devise, in terms denoting the testator's intention to devise his entire interest in all his real or personal property, shall be construed to pass all of the estate in such property, including estates for the life of another, which he was entitled to devise at his death." p. 700.

From Probate Court of Marion County (335); *Frank B. Ross*, Judge.

Action by Thomas H. Spann, as executor of the last will of Agnes C. Brown, deceased, against Effie C. Skinner and others. From the judgment rendered, Effie C. Skinner and another appeal. *Affirmed.*

*Elias D. Salsbury, Philip Wilkinson, Jameson & Hay, W. A. Bastian* and *R. W. McBride*, for appellants.

*Gavin, Gavin & Davis, Miller, Shirley, Miller & Thompson, Stafford & Arthur, Walter S. Bent* and *L. C. Walker*, for appellees.

JORDAN, J.—This is an appeal prosecuted by appellants Effie C. Skinner and Georgiana Smith, from a judgment in the Probate Court of Marion County, Indiana, whereby the last wills of James W. Brown and Agnes C. Brown, deceased, were construed and interpreted by that court. The proceedings were instituted by appellee Thomas H. Spann, the executor of the will of Agnes C. Brown. All persons concerned in the interpretation of either or both of these wills—so far as they were in controversy—were brought before the lower court by the complaint of the executor and by the five cross-complaints of defendants. The issues raised by these pleadings were in respect to the proper construction or interpretation of the respective wills. The facts alleged in the complaints in question, in relation to the real estate owned by James W. Brown and the property remaining on hand at the death of Agnes C. Brown, are substantially the same.

There was a special finding of facts by the lower court and conclusions of law thereon. To these conclusions, and each of them, appellants herein separately excepted. Over

their exceptions the court rendered its final judgment and
decree, whereby it construed and interpreted the provisions
of the two wills in controversy, substantially as follows:
Said Agnes C. Brown, at the time of her death, was the
absolute owner of all the personal estate of every kind and
nature then in her possession, and which had been inven-
toried by her executor, Thomas H. Spann, except the sum
of $15,600, in notes and money, arising from the sale of
real estate sold by her under the power conferred by the
will of James W. Brown. Prior to the death of Agnes C.
Brown she was the owner of a life estate in all the real estate
of which her husband, James W. Brown, died seized, except
certain described real estate in the city of Indianapolis,
which by item three of the will of her said husband was
devised to his sister, Margaret M. Sprole, and, except also,
the real estate that she had sold under authority of the
will during her lifetime. Said Agnes C. Brown was also,
in addition to her life estate in said real estate, em-
powered to sell and convey any part thereof except that
devised by James W. Brown to his sister, Margaret M.
Sprole, and to reinvest the proceeds thereof according to
her judgment for the betterment of the estate, and to in-
crease the income thereof. Upon the death of the testator,
James W. Brown, the absolute title and ownership in and
to the fee simple of the real estate of which he died seized,
subject to the life estate and power of sale aforesaid, vested
in the nieces and nephews of the testator, James W. Brown,
as mentioned in item two of his will, to wit, Nellie M.
Johnson (only child of John B. Munson, nephew of said
James W. Brown) an undivided one-eighth, etc. Here the
decree names the various persons and their interests, who,
under item two of the will of James W. Brown, were invested
with the fee in and to the real estate devised for life to his
wife, Agnes C. Brown, and here in controversy, and also
names certain children who succeeded to and acquired the
interest of their deceased father, who was a beneficiary under

item two of the will of James W. Brown, and also decrees that the cross-complainants, Alpharetta Munson and Kate Munson, by the death of said Charles Munson, husband of said Alpharetta and father of said Kate, succeeded to and became seized of the entire interest of said Charles Munson in the real estate so devised to him by the will of said James W. Brown, in the following proportions, to wit, each the undivided one-sixteenth thereof. The real estate of which the said James W. Brown died seized and which at the death of his wife, Agnes C. Brown, remained unsold, is described and set out in the decree. It is further decreed that Thomas H. Spann, as executor of the last will of Agnes C. Brown, is entitled to and does hold, as a part of the assets of the estate of said Agnes C. Brown, all the personal estate which has come into his hands as such executor, including all the money, notes, accounts, stocks, bonds, choses in action and all other personal property of any kind and character, to be by him disposed of according to the terms of the will of Agnes C. Brown, except the sum of $15,600, in notes and money, which represents the proceeds of the real estate sold by Agnes C. Brown in her lifetime under her said husband's will.

It is further adjudged that neither of the cross-complainants, Georgiana Smith nor Effie C. Skinner (appellants herein), has any interest in any of the real estate described in the complaint or cross-complaints, or in any of the personal assets which have come into the hands of the executor of Agnes C. Brown, save and except that said Effie C. Skinner is entitled to have and receive, upon settlement of the estate of Agnes C. Brown, the sum of $4,000, which is especially devised to her by the will of said Agnes C. Brown; that all the personal estate of Agnes C. Brown of every kind and nature, including money, notes, accounts, stocks, bonds, choses in action, and all other kinds of property of such class that has come into the hands of Thomas H. Spann, as executor of the will of said Agnes C.

Brown, or which has been by him inventoried as a part of the assets of said estate, except the sum of $15,600, in notes and money, before referred to, is by said executor to be held in trust for the following purposes, to wit: (1) Payment of costs, etc.; (2) payment of the debts of decedent, Agnes C. Brown; (3) payment and satisfaction of the specific legacies and bequests created by the will of Agnes C. Brown; (4) all the residue of her said personal estate, if any, shall be by the executor, upon the settlement of the estate, divided equally between and paid over to the defendants, the Board of Home Missions of the Presbyterian Church in the United States of America and the Board of Home Missions and Church Extension of the Methodist Episcopal Church.

Some of the material facts contained in the special finding of the court may be summarized as follows: James W. Brown and Agnes C. Brown were husband and wife. They were married in the year 1874, at which time Mr. Brown was fifty years old and his wife, Agnes C., was thirty-three years old. Neither of them had been previously married. No children resulted from their marriage. James W. Brown died on December 5, 1891, in Marion county, Indiana, where he had resided for many years. At the time of his death he was the owner in fee simple of real estate situated in the city of Indianapolis, Marion county, Indiana, of the value of over $100,000. He was also the owner of personal property of the value of $5,518.79, which his widow, Agnes C. Brown, took and received absolutely as her own, after the payment of debts. His real estate, after his death, increased in value, and what remained undisposed of at the death of his widow, Agnes C. Brown, who died on December 11, 1908, was of the value of $200,000. In addition to the real estate undisposed of at her death, there remained in her hands the sum of $15,600, the proceeds of lands owned by her husband at the date of his death, and which were sold by her under the power of sale provided by the will of her husband. The will of James W. Brown was executed on

November 11, 1891. At that time his father and mother and all his brothers and sisters were dead, except his sister, Margaret M. Sprole, who was childless.

Appellees herein, who are claiming under item two of the will of James W. Brown, are the only surviving blood kindred of Brown, except his childless sister, Margaret M. Sprole. Omitting the attestation clause, the following is a copy of the will of James W. Brown:

"I, James W. Brown, do hereby declare the following disposition of my property to be my last will:

Item No. 1. I give and bequeath to my wife, Agnes C. Brown, all my personal property remaining after the payment of my debts, to be her absolute property. Also all rents and profits arising from my real estate not otherwise disposed of in this will for her use and benefit during her life. Should such rents and profits and personal property as herein mentioned be insufficient for her comfortable maintenance and support she is hereby authorized and empowered to dispose of, sell and convey so much of my real estate and appropriate the proceeds thereof as may be necessary for her comfortable maintenance and support. Also I give her the right and empower her to sell and convey by deed any of my real estate not otherwise disposed of in this will, if in her judgment it should become advisable so to do, and she shall invest the proceeds as she may think best for the betterment of the estate and the increase of the income thereof.

Item No. 2. Upon the death of my wife I hereby direct that all of said property referred to in the first item of this will, as devised to her for her own use and benefit during her life, which shall be remaining, shall be divided in eight equal parts and one-eighth given to the children of my nephew, John B. Munson, and one-eighth to each of the following persons, to wit: Alice M. Cheney, Lida Munson, Charles Munson, children of my sister Eliza J. Munson, Jennie Brown, Alexander B. Brown, Emma Minnich, children of my brother, Alexander M. Brown, and the remaining one-eighth to be divided equally between Irvin Wilson and Irene Wilson, children of my niece, Louise M. Grant.

Item No. 3. I give and devise to my sister, Margaret M. Sprole, lot twenty in square eight, in Hubbard, Martindale et al. southeast addition to the city of In-

dianapolis, Marion county, State of Indiana, also lots forty, forty-one, forty-two, forty-three and forty-four, square one, in Wright's first north side addition to the city of Indianapolis, Marion county, Indiana. This devise and bequest, however, is upon condition that said Margaret M. Sprole accepts the same, and shall assert no claim of any kind against my estate. I am in noway indebted to her, and this devise is not made in payment or satisfaction of any liability, but out of love and affection for my sister. If she shall assert any claim against my estate, or liability on the part of the same to her, in that event this devise and bequest is to be void, and the property described in this item shall then be disposed of under the provisions of item first of this will.

Item No. 4. I hereby revoke all wills heretofore made by me.

Item No. 5. I hereby appoint my wife, Agnes C. Brown, my executor to carry out the provisions of this will."

Agnes C. Brown remained the widow of James W. Brown until her death, and at the time of her death she was the owner of personal property, including money, to the value of $25,000, which she disposed of under the provisions of her will. She left surviving her no child, nor descendants of any child, and no father nor mother, leaving Effie C. Skinner and Georgiana Smith, her sisters, as her sole and only heirs at law. Her will, which was executed on August 14, 1906, is as follows:

"I, Agnes C. Brown, of the city of Indianapolis, Marion county, Indiana, do make this my last will and testament, hereby revoking any and all wills heretofore made by me.

1. I direct my executor to pay my funeral expenses and all just debts or obligations.

2. I give and bequeath to my nephew, Ralph M. Skinner, residing at No. 73 Green avenue, in the city of Brooklyn, New York, ten silver teaspoons marked 'Agnes' on one side and 'Mary' on the reverse.

3. To my sister, Mrs. Effie C. Skinner, residing at No. 73 Green avenue, in the city of Brooklyn, New York, the sum of $4,000, together with all my clothing, table linen and lace curtains."

Here follow a number of other clauses or items, bequeathing numerous specific articles of personal property, such as a diamond ring, ear rings, pictures, paintings, music box, money, etc., to certain named relatives, friends and servants. We make mention of the following only: To the Rescue Mission and Home of Indianapolis there is bequeathed the sum of $500; to the Moravian Episcopal Church, in the city of Indianapolis, the sum of $800; to the Industrial Home for Blind Men, of the latter city, the sum of $500.

After all the specific bequests, the will then, by item twenty-one, provides as follows:

"I desire my executor to have the old horse (which I have owned for a number of years) shot; to sell all the remainder of my household furniture, goods, chattels and stock at the best price he may be able to obtain, using his judgment in the manner of the sale of the same, and to convert all other personal property which I may possess at my death into money, and divide the same equally between the general boards of the Presbyterian and Methodist churches for the cause of home missions."

It will be noted that the lower court, by its decree, construed or interpreted the will of James W. Brown to give to his widow, Agnes C. Brown, a life estate in all his real estate, except the portion that he specifically devised to his sister, Margaret M. Sprole, and thereunder he invested her with two powers of sale, one for her own benefit and the other for the benefit of the estate; that at her death the part of his lands which remained undisposed of he gave the fee simple, together with the proceeds arising out of that which she had sold under the power conferred upon her by the will for the betterment of the estate, to the persons as directed in the second item of the will. These parties are the appellees in this appeal.

Appellants Effie C. Skinner and Georgiana Smith are the only surviving sisters of Agnes C. Brown, the deceased widow of James W. Brown. The argument advanced by

Mrs. Smith's counsel, in respect to what should be the proper construction of the will of James W. Brown, is that it should be so construed or interpreted as to mean that by item one the testator gave to his wife, Agnes C. Brown, for her use and benefit during her life, the rents and profits arising out of the real estate, and that by item two he directed and devised that at the death of his said wife all these rents and profits, which remained unused or unconsumed by his wife, should be divided into eight equal parts, and that one part should go to each of the testator's nephews and nieces, etc., as provided by item two; that the court should hold that under said will no real estate whatever, nor any interest therein, was devised to appellees, nor was intended by the testator to be given to them; that so far as the real property of James W. Brown is concerned—with the exception of that devised to Margaret M. Sprole, his sister—it remained undisposed of by the will, and at his death, under the statute of descents, it went in fee simple to his only surviving heir, his wife, Agnes C. Brown.

Continuing their argument, counsel for Mrs. Smith say: "Now, by devising to Agnes C. Brown the rents and profits of the real estate for her use and benefit during her life, testator, by implication or by rule of construction, gave her some interest in the real estate. Such interest was indefinite to some extent, and it may be difficult to state just what interest she took in said real estate. It is sufficient, however, to know that the interest thus given was some kind of a life interest, but not 'an estate for life only, by certain and express terms,' and that it was not such a life estate as would give her the rents and profits absolutely. * * * We concede that where the rents and profits of real estate are devised to a person absolutely it carries with it a life estate in such property by a rule of construction, but we insist that it does not create a life estate 'by certain and express terms' as a rule of law. * * * By giving to Agnes C. Brown the rents and profits of real estate for her

use and benefit during her life, testator gave her some interest in the real estate, be it more or less than a life estate, but the rule of construction as to taking a life estate in realty from a gift absolutely of the rents and profits would not apply even if such a gift had been made by the will, because it would enlarge her interest in the rents and profits from 'use during her life' to an absolute ownership therein, contrary to and inconsistent with the plain intent of the testator and the unequivocal terms of the will."

Counsel for Mrs. Skinner virtually concur in the view entertained by counsel representing Mrs. Smith. If the interpretation or construction of the will for which appellants contend be sustained, it will, in effect, result in a holding that as to about ninety-five per cent of the real estate owned and held by James W. Brown at the date of his death, he died intestate, and that such undevised property at his death descended in fee simple to his widow as his only heir. This will not be the only result of such interpretation, but the conclusion must necessarily follow that Agnes C. Brown, his widow, under her will here involved, also died intestate in respect to the lands that appellants claim she acquired by descent from her husband, for it will be noted that she does not in any manner whatever profess to dispose of any real estate. This is conceded by appellants, for they base their title or right to the land in question, as against appellees, upon the fact, as alleged, that they acquired such property by descent from their sister, Agnes C. Brown.

Under the circumstances it follows that appellants, in their endeavor to sustain the construction of the will of James W. Brown, for which they contend, are

1. confronted with the well-settled rule which requires a court in the construction of a will so to interpret the instrument as to avoid or prevent partial intestacy, unless the language or provisions of the will require a construction that will impress it with a partial intestacy. This rule

has been affirmed and reaffirmed by this court in a series of decisions extending from *Cate* v. *Cranor* (1868), 30 Ind. 292, to *Myers* v. *Carney* (1908), 171 Ind. 379. See the authorities cited in this latter case.

2. The fact that a person has made a will creates a strong presumption that thereunder he intends to dispose of his entire estate, unless such intention is rebutted by some provision or language of the will, or by other evidence to the contrary. *Cate* v. *Cranor, supra; Roy* v. *Rowe* (1883), 90 Ind. 54; *Mills* v. *Franklin* (1891), 128 Ind. 444; *Groves* v. *Culph* (1892), 132 Ind. 186; *Pate* v. *Bushong* (1903), 161 Ind. 533, 63 L. R. A. 593, 100 Am. St. 287, and authorities cited.

3. In the interpretation of a will the primary purpose on the part of a court is to discover, if possible, the intention of the testator, and give effect thereto, as he has expressed such intention in his will, provided always that this can be done without contravening some principle of public policy, or some inflexible or unyielding rule of law. *Brunson* v. *Martin* (1899), 152 Ind. 111; *Stimson* v. *Rountree* (1907), 168 Ind. 169.

4. In the construction of a will all its parts must be considered together, and, when necessary, in order to ascertain the testator's intention, the court will, in addition to considering its provisions, look to and consider the circumstances under which it was executed—in respect to the condition of the testator and also that of his property, family and the objects of his bounty—and will, so far as possible, place itself in the position of the testator at the time he executed his will. *Jenkins* v. *Compton* (1890), 123 Ind. 117; *Brunson* v. *Martin, supra,* and authorities cited.

5. A will should be so construed as to give effect to all the language and provisions thereof, and, if possible, it must not be interpreted so as to render any part thereof superfluous, absurd or meaningless. *Wood* v. *Robertson* (1888) 113 Ind. 323; *Jenkins* v. *Compton, supra.*

Rules in respect to construction of wills rest upon substantial ground, and are intended, in cases of doubt, to serve as aids to the court in determining the true

6. intent of the testator in a case in which such intention is not clearly disclosed by the terms or language of his will. *Myers* v. *Carney, supra.*

Guided by the rules of construction to which we have referred, we shall first consider the construction of the will of James W. Brown. This instrument was executed on November 11, 1891, and his death occurred in less than a month thereafter. He was married late in life, being fifty years of age and his wife thirty-three. They had no children. At the time he executed his will, his father and mother were dead, and so were all his brothers and sisters, except his sister, Margaret M. Sprole. Aside from her, he had no surviving kindred of his own blood except his nieces and nephews mentioned in item two of his will. He was nearly seventy years of age, and was the owner of personal and real property. The net amount of the personal property received by his widow, which was given to her by the will, was $5,518.79. His real estate, at the time he made his will, was of the value of $100,000, and continued thereafter to increase in value. Undoubtedly he recognized the fact that, in the absence of a will, his wife at his death, as his sole heir, would inherit all his large estate, to the exclusion of the kindred of his own blood. For this reason, perhaps, he appears to have concluded to dispose of his property as he deemed best during his life, and this purpose apparently led up to the execution of the will in question. It was his desire, no doubt, to make ample provision for the benefit of his surviving widow during her life, and this desire he appears to have carried out by the provisions of his will. These provisions she seems to have accepted, as there is nothing to disclose that she elected to take under

7. the law in lieu of her husband's will. Naught appearing to the contrary, we may assume that James

W. Brown, the testator, was the scrivener of his own will. It must be presumed further, that in making a disposition of his property by will he acted in the light of the well-settled legal meaning of the words and terms that he therein employed, unless there is some language or provision in the instrument to repel such presumption. *Taylor* v. *Stephens* (1905), 165 Ind. 200, and authorities cited; *Rocker* v. *Metzger* (1908), 171 Ind. 364.

In the introductory part of the document the testator states that "I, James W. Brown, do hereby declare the following disposition of my property to be my last will." This positive declaration by the testator lends much force to the legal presumption that arises from the fact that he made a will, that he thereby intended to dispose of all his estate, and did not intend to die intestate as to any portion thereof. In item three of his will, in dealing with the devise that he made to his sister, Margaret M. Sprole, he declares: "If she shall assert any claim against my estate, or liability on the part of the same to her, in that event this devise and bequest is to be void, and the property described in this item [which property, as will be noted, consisted of certain lots of land in the city of Indianapolis] shall then be disposed of under the provisions of item first of this will."

If it could be said in this case that the disposition by the testator of his entire estate was a doubtful question, we are satisfied that the two positive declarations in the will, that we just set out, fully reveal that he intended to dispose of all his real estate, and that it was not his intention to die intestate as to any part thereof. His intention in this respect is certainly emphasized by the provision in the third item of his will, that in event the devise of the lands to his sister, Margaret M. Sprole, should become void, then and in that event the property which he had described as devised to her should be disposed of under the provisions of the first item of his will; or, in other words, the disposition thereof

should be in like manner as provided for the disposal of the real estate mentioned in the first item of his will.

Briefly, it may be said that there is nothing in the language of the will that can be said to rebut the legal presumption that the testator intended to make a complete disposition of his entire estate; but, on the contrary, the positive declarations in his will fully sustain this intention. Having reached the conclusion that this was the testator's intention, we may next inquire and determine whether he has carried it out in harmony with the well-settled rules of law.

The first disposition of his property, as made in his will, is to his wife, Agnes C. Brown, absolutely, of all his personal property remaining after the payment of his debts. Next, in addition to the personalty, he gives to her, for her use and benefit during her life, all rents and profits arising from his real estate not otherwise disposed of in his will, and authorizes and empowers her, if such rents and profits and the personal property bequeathed to her be insufficient for her comfortable maintenance and support, to dispose of, sell and convey so much of his real estate, and to appropriate the proceeds thereof, as may be necessary for her comfortable maintenance and support. Immediately following this provision, he invests her with a second power, namely, to sell and convey by deed any of his real estate not otherwise disposed of in his will, if, in her judgment, it should become advisable so to do, and to invest the proceeds as she may think best for the betterment of the estate and the increase of the income thereof.

The devise to Agnes C. Brown of the rents and profits arising out of the land of her husband was for her use and benefit during her life. It will be noted that this 10. devise was coupled with powers of disposition; not absolutely, however, but powers to be exercised for a designated purpose. The first was the authority to sell so much of the real estate as might be necessary for her comfortable maintenance and support; the second vesting in

her authority to sell and dispose of any of the real estate, if she deemed it advisable for the betterment of the estate and the increase of the income thereof. The words "for her use and benefit during her life" cannot serve to reduce her interest in her husband's lands below that of a life estate. *Thompson* v. *Schenck* (1861), 16 Ind. 194.

Under the construction accorded to the will in question by counsel for appellants, it is only the rents and profits, separate and apart from the lands out of which they arise, that are by item one devised to testator's wife for her use and benefit during life. Under this contention, the argument is advanced that the land itself was not disposed of, and at the death of the wife the rents and profits so devised, that then remained unconsumed, passed, under item two of the will, to the testator's nieces and nephews therein mentioned, to be divided among them as directed. Or, in other words, the view of appellants, in effect at least, is that the rents and profits must be separated from the real estate out of which they arise, and what remain unconsumed at the death of the testator must be disposed of under the provisions of item two. It is insisted that by the term "property," in the following clause in item two—

"I hereby direct that all of said property referred to in the first item * * * devised to her for her own use and benefit during her life, which shall be remaining, shall be divided in equal parts and * * * given to the children of my nephew," etc.

—the testator intended only the rents and profits devised to his wife, and not the real estate itself. Of course the testator in devising a life estate in his lands to his wife could have done so by the use of terse language, or terms to express his intention in this respect. Nevertheless, in making the devise to his wife he appears to have employed language which, under a well-settled rule, had been construed to be the equivalent of a devise of the land itself, and which had been held to vest or carry the legal title thereof to the de-

visee as well as the beneficial interests therein. The rule that a devise of the rents and profits or income of land for the use of the devisee is equivalent to a devise of the land itself, and passes or carries the legal title thereof to the devisee as well as the beneficial interests therein, is one that has been well affirmed and sustained by the authorities. See *Thompson* v. *Schenck, supra; Stout* v. *Dunning* (1880), 72 Ind. 343; *Williams* v. *Owen* (1888), 116 Ind. 70; *Miller* v. *Wohlford* (1889), 119 Ind. 305; *Bowen* v. *Swander* (1889), 121 Ind. 164; *Jenkins* v. *Compton, supra; Hunt* v. *Williams* (1891), 126 Ind. 493; *Connor* v. *Gardner* (1907), 230 Ill. 258, 82 N. E. 640, 15 L. R. A. (N. S.) 73.

The same rule was announced by Lord Coke, in Coke on Littleton (Hargrave & Butler's ed.) 4. b., where it is said: "[g] If a man seized of lands in fee by his deed granteth to another the profit of those lands, and to have and to hold to him and his heirs and maketh livery *secundum formam chartae, the whole land itselfe doth passe; for what is the land but the profits thereof?"* (Our italics.)

In the case of *Lewis* v. *Palmer* (1878), 46 Conn. 454, the testator in a will there involved devised as follows: "I do give and devise unto my said sister Sarah Palmer the use of all the rest of my real estate that I may have or leave at my death, during her natural life, and for her to dispose of as she may think proper." It was contended in that case that the provision "for her to dispose of as she may think proper" referred to the use, and not to the estate itself. The court in considering the question said: "If that is the true meaning of the will then the words quoted are without force. * * * There is no substantial difference between giving real estate for life, and the use of real estate for life. They both mean the same thing. The distinction is all in the words and not in the meaning, and too shadowy to admit of, much less to require, a difference in construction."

Many other decisions of courts of sister states, as well

as textbooks, might be cited, but the authorities just cited will suffice.

It is true that this is not an inflexible rule of law, but that it is one of construction, that may be rebutted by any clear expression in the will to the contrary. We must presume that James W. Brown had knowledge of this rule, and used the words in the light of the meaning that had been accorded to them. *Taylor* v. *Stephens, supra; Rocker* v. *Metzger, supra*.

We discover no expressions or provisions in the will that can be said to repel the force and effect of the rule in question.

Appellants' counsel appear to entertain the idea that the testator intended that at his death his wife should become the owner in fee of all his real estate not otherwise devised; that if it can be held that his will did not invest her with a fee-simple title to her husband's land, then he intended that at his death the land should descend to her under the law as undevised property. Such a construction would render absurd the provisions in the will that empower her to dispose of, sell and convey the real estate for her maintenance and support, and the further provision authorizing her to sell and convey any of the land, and invest the proceeds arising from the sale for the betterment of the estate and the increase of the income. If he intended that his wife at his death should become the owner absolutely in fee simple of his real property—except that which he had devised to his sister Margaret M. Sprole—why did he consider it necessary to empower her to sell that which he had given to her, as claimed, as her own property? Under the circumstances such provisions were unnecessary and superfluous, and, as previously asserted, his will must be so construed as not to render any of its provisions absurd, superfluous or meaningless. It is certainly unreasonable to assert that the testator intended to confer upon his wife the power to sell that which he intended should go to her

absolutely as her own property. As a general rule, a power of sale conferred upon a person to whom real estate is devised is regarded as inconsistent with the intention of the testator to invest such devisee with a fee-simple title to the land devised. *Wood* v. *Robertson, supra.*

If the construction of the will for which appellants contend could prevail, we would have the testator separating the rents and profits from the land out of which they arose, and devising them to his wife for life, with the direction that at her death the bare remainder thereof, if any, should go to the persons—kindred of his own blood—mentioned in item two of his will. If, at the death of his wife, nothing remained of this income, the kindred of his own blood— except his sister, Margaret M. Sprole—would receive nothing out of his large estate, and it, in its entirety, would go to his wife, and ultimately, perhaps, to her blood kindred, to the exclusion of his.

In view of the language and provisions of the will, and the circumstances and conditions of the testator at the time of its execution, we cannot, in reason, adopt appellants' construction. To sustain their interpretation would violate well-settled rules of the law, and defeat what we believe was the intention of the testator. By the expression "my real estate not otherwise disposed of in this will," as contained in item one, the testator intended to except the real estate that he had devised to his sister, Margaret M. Sprole, in item three of his will.

The testator's wife appears to have survived her husband about seventeen years. She seems to have understood the intention of her husband, as expressed in his will in regard to the disposition of his estate, for, so far as disclosed, there was no attempt on her part after his death to claim anything more than a life estate in his land. The fact that her will is silent in respect to the disposition of any real estate, goes to show that she did not believe that she had acquired any land from her husband that she could dispose of by her will.

By the provision contained in item two, "that all of said property referred to in the first item of this will, as devised to her [his wife] for her own use and benefit during her life, which shall be remaining, shall be divided into eight equal parts," etc., the testator evidently meant the land itself, which he devised to his wife for life under the first item, and did not mean merely, as appellants insist, the unconsumed rents and profits remaining at the death of the wife.

The authorities cited by appellants to support their contention are cases involving wills quite different from this one, and therefore are clearly distinguishable. Our own cases fully sustain the conclusion we have reached in regard to the interpretation of this will.

Without attempting to refer in detail to all the points and arguments presented by appellants' counsel, we conclude, and so hold, that by the first item of said will the testator devised to his wife, Agnes C. Brown, a life estate in all his land, except that which he specifically devised in item three to his sister, Margaret M. Sprole; that the life estate so devised to her was coupled with two powers of disposition, as therein conferred for the purposes designated; that at the death of the testator a fee simple in and to all the lands devised to his wife for life vested in appellees by item two of the will, subject to said life estate of Agnes C. Brown, and subject to the powers of sale and disposition as therein conferred. The enjoyment, however, by the appellees of the lands so devised to them was postponed until the death of the life tenant, Agnes C. Brown.

We shall next take up for consideration the will of Agnes C. Brown.

By item twenty-one the testatrix constitutes the two boards of home missions her residuary legatees. This is the last item of the will, and it immediately follows some twenty other specific bequests, which include household furniture, money and other personal property,

as heretofore stated and mentioned in this opinion. These two residuary legatees are not named or included in any specific bequests contained in Mrs. Brown's will, or, in other words, there is no bequest made to them independent of the residue bequeathed in item twenty-one. There is in her will no gift to her sister, appellant Georgiana Smith, but, as previously stated, she specifically gives the sum of $4,000 to her sister, appellant Effie C. Skinner. We are met with the contention of counsel for Mrs. Skinner, that the will must be so construed as to pass into the residuary clause, to be divided equally between the two mission boards, the sum of only $1,045.51, that being the amount received from the sale of the household furniture, goods and chattels, and other personal property, as disclosed by the forty-second special finding of the lower court. It is insisted that this is the only money which, under the will, can legally go to and be divided between the boards of home missions, two of the appellees; that all the remainder of the personal estate of the testatrix, after the payment of the cost of administration, debts and obligations for which her estate is liable, and the discharge of the specific bequests provided for by the will, must be divided equally between appellants as property of which testatrix died intestate. In order to bring about this partial intestacy, counsel invoke the application of the doctrine of *ejusdem generis.*

If it could be said that said doctrine is in any manner applicable to this case, it will not in its application be permitted to contravene the actual intention of the testatrix, which is to be ascertained from the entire provisions, terms and scope of her will.

In the case of *Williams* v. *Williams* (1836), 18 Tenn. *20, a will in some respects quite similar to the one before us was involved. The testator therein, after making several specific gifts, three of which were money legacies and one a devise of land, gave, in the last item of his will, to a certain beneficiary therein mentioned, all his lands not otherwise

disposed of by the will, and certain slaves specially designated, and then added: "I also give  *  *  *  him all of my stock of all kinds, household and kitchen furniture, with all my notes and accounts, with my stills, whisky, and everything else not otherwise disposed of." The condition was annexed that the beneficiary should pay the money legacies provided by the will within a given time, and also the just debts of the testator. This was held clearly to constitute a residuary devise, and was not limited to articles *ejusdem generis*, and therefore carried the slaves of the testator acquired by him after the execution of his will. In this case, as in the one at bar, it was sought to have the rule of *ejusdem generis* applied to control the residuary clause. The court in passing upon the question said: "The great rule in the construction of wills, to which this one of *ejusdem generis* and all others, except those founded upon public policy, are not only subordinate but ancillary, is that the intention of the testator, to be ascertained from the particular words used, from the context, and from the general scope and purpose of the instrument, is to prevail and have effect. In an enumeration of particulars, general and comprehensive terms are sometimes used, in the construction of which reason and good sense require that, if you would not violate the intention of the writer, their meaning must be restricted to things of a like nature and description with the particulars among which they are found. This is a rule of intention, and it readily yields where the circumstances show that a reliance upon it would defeat, rather than effectuate, the intention."

In the cases of *Arnold* v. *Arnold* (1834), 2 Myl. & K. 365, in a will there involved, a bequest of "wines and property in England" was held to pass the testator's property in England of every description, including money in the funds and at his banker's, debts and arrears of a pension due him, and was not confined to property *ejusdem generis* with wine. In that case the court said: "That the mere enumeration

of particular articles, followed by a general bequest, does not of necessity restrict the general bequest, is obvious, because, as has been stated, a testator often throws in such specific words, and then winds up the catalogue with some comprehensive expression, for the very purpose of preventing the bequest from being so restricted."

Appellants' counsel argue that the provision in item twenty-one, whereby the testatrix directs her executor to convert into money all other personal property that she may possess at her death, and divide this equally between the two boards of home missions, must be limited to personal property, *ejusdem generis* with that mentioned and enumerated in the item next preceding. It will be noted that item twenty-one is the only residuary clause in the will. Therefore, if after the payment of the cost of administration, funeral expenses of the decedent, and all the just debts and obligations of her estate, and the discharge of the specific bequests made by her in the will, the residue of her personal estate of every kind and character whatever is not disposed of by the residuary clause, then it must be held that all the remainder of her personal estate, amounting to about $8,000, was left undisposed of, and in respect to that part she died intestate. This, too, against the presumptive rule to which we have herein referred, that she intended to dispose of her entire estate, and to die intestate as to no portion thereof. This contention of counsel is unsound, and cannot be maintained.

It is only under two items of the will that she gives directions to her executor, namely: "Item 1. I direct my executor to pay my funeral expenses and all just debts and obligations."

In item twenty-one she directs him to have the old horse shot. The next and further direction is "to sell all the remainder of my household furniture, goods, chattels and stock at the best price he may be able to obtain," and "to convert all other personal property which I may possess at

my death into money, and divide the same equally between the general boards of the Presbyterian and Methodist churches for the cause of home missions."

Some of the special dispositions she made embrace household furniture, other personal property—for instance, a cow—while others bequeath money legacies only. Immediately following these special bequests by item twenty-one, she disposes of the old horse by directing that it be shot, and then directs her executor to sell all the remainder of her household furniture, goods, chattels and stock.

By this direction the testatrix evidently meant and intended for the executor to sell, for the purpose of converting into money preparatory to a division thereof between the two boards mentioned, all her household furniture, goods and chattels capable of being sold, that had not previously been disposed of by the will.

As disclosed by the special finding, the personal property owned and held by her at the time of her death consisted of money, notes, bonds, mortgages, household furniture, goods and chattels, and the articles and property specifically devised in the will. Mrs. Brown, at the time she executed her will, no doubt realized that she might at the date of her death hold personal property, such as notes, bonds and mortgages, which could be converted into money by a method more convenient and better than that of a sale, namely, the collection thereof when due by her executor.

Clearly the phrase "all other personal property," as directed by the testatrix to be converted into money, should be construed as meaning all personal property other than that previously disposed of in any of the preceding items of the will. The word "other" must be read in connection with the preceding provisions of the will. The mere enumeration of particular articles of property, followed by a general bequest or residuary clause, does not, as the authorities affirm, restrict the general bequest. *Williams* v. *Williams, supra; Arnold* v. *Arnold, supra.*

The words "personal property," employed by the testatrix in item twenty-one, in the direction "to convert all other personal property into money," are quite comprehensive, sufficiently so to include all goods, chattels, notes, bonds, mortgages, choses in action, and money held and possessed by the testatrix at the date of her death. *Cate* v. *Cranor* (1868), 30 Ind. 292; *Vawter* v. *Griffin* (1872), 40 Ind. 593; *Bush* v. *Groomes* (1890), 125 Ind. 14; *Simmons* v. *Beazel* (1890), 125 Ind. 362; *Stief* v. *Hart* (1847), 1 N. Y. 20.

In the case of *Simmons* v. *Beazel*, *supra*, the will there involved contained the following clause: "I give and bequeath to my beloved wife all the personal property which I may have at my death." This court in that case said: "This language is broad enough and emphatic enough to cover his personal estate of every kind, and derived from whatever source."

In the case of *Cate* v. *Cranor*, *supra*, the will contained the following provision: "My further will and desire is, that my executors sell all of my property not above named, and the proceeds, after paying all my just debts and the above-named bequests, be divided amongst my sons"— naming them. It appeared in that case that the testator at the time of his death had certain money and notes and the argument was advanced by appellant that inasmuch as the will did not specifically mention money and notes, and it was not reasonable to suppose that the testator meant that money should be sold, therefore, it was insisted that the money and notes which he held were not included in the word "property," and that in respect to this part of his estate he died intestate. This contention the court denied, and held that the term "property" embraced the right one has to things in action as well as the right to those in possession, including things both real and personal, promissory notes and money. The court held that while there was some plausibility in appellant's argument, nevertheless it was unsound, and that it was the intention of the testator

to convert all his estate into money, and divide it as directed; that to construe the will otherwise would result in partial intestacy, which was to be avoided, unless the language of the will compelled it.

So, in this case, it cannot be presumed that, by the direction "to convert all other personal property into money," the testatrix did not intend to include any part of her property that at the time of her death might already consist of money. She certainly did not expect that her executor would do that which had been accomplished previously to her demise.

We hold that by the judgment of the lower court each of the wills here involved was correctly interpreted and construed.

Appellants complain because the court below rendered judgment against them for costs. We cannot disturb the judgment on the question of costs. No motion was made below to tax any costs against appellees. Therefore, no question in respect to the apportionment of costs is presented.

Finding no error the judgment below is in all things affirmed.

## ON PETITION FOR REHEARING.

JORDAN, C. J.—Appellants have filed a petition for rehearing in this appeal, wherein they assign numerous reasons, and in support thereof they present an extended argument. Their counsel still appear to be impressed with the view that all that passed to the wife of the testator was merely the rents and profits of the land, and all that he intended to give to his nieces and nephews (appellees herein) was the mere unconsumed portion of these rents and profits remaining at the death of his wife. It is claimed that, in reaching the conclusion we did at the former hearing, we overlooked, ignored and overthrew well-settled rules of law. Upon this feature, they especially argue that we ignored

the old rule of the common law which they advanced, to the effect that a general devise of real estate, that does not define the interest to be taken by the devisee, passes only a life estate, unless it affirmatively appears from the will that a greater estate was intended. They insist that this is a rule of law and not of construction, and seemingly insist that it is an inflexible rule, and one to which all other rules pertaining to the interpretation of wills must become subordinate. It is argued that we erred in overlooking the fact, as they claim, that the devise in the will to appellees is a general one, containing no words of inheritance or limitation, and no words defining the extent of the interest to be taken by them, therefore, the common-law rule for which they contend must prevail, and thereunder it must be held that the devise to appellees passed to them only a life estate.

Upon the proposition that a devise of the rents and profits or the income of land is in effect a devise of the land itself, we, in addition to the authorities cited in the original opinion, refer to the following: *Merrill* v. *American, etc., Union* (1905), 73 N. H. 414, 62 Atl. 647, 3 L. R. A. (N. S.) 1143, 111 Am. St. 632; *Reed* v. *Reed* (1812), 9 Mass. *372; *Sampson* v. *Randall* (1881), 72 Me. 109; *Diament* v. *Lore* (1865), 31 N. J. L. 220.

It is certainly immaterial what language or terms the testator. employed to express his intention that his wife was to be invested with a life estate in his lands. That he carried out his intention by the use of language well recognized by law, is sufficient. We have, therefore, the settled fact that his wife took a life estate in all his lands, other than that which he devised to his sister, Margaret M. Sprole. The inquiry then arises, What disposition, if any, did he make of the fee-simple interest which he held? This fee interest, as shown, amounted to about ninety-five per cent of his entire estate.

Counsel for appellants, in their brief on petition for re-

hearing, still assert that as to his fee interest in his lands the testator intended to and did die intestate, and, therefore, at his death the lands devised to his wife for life descended to her in fee simple as his heir, and at her death they descended to appellants as her heirs under the law.

At the former hearing we did not ignore the common-law rule, but were convinced by the consideration of the will in its entirety, as well as by certain portions thereof, that the intention of the testator, to invest appellees with the fee simple in the lands devised to them, was plainly shown. Therefore, according to the decisions, to which we shall hereafter refer, there was no room for the application of this rule. The principle is well settled that in a testamentary devise of land, the term "heirs," or any other legal word of inheritance, is not necessary to pass the fee to the devisee. As appellants now seem to rest their case upon the common-law rule, which they apparently insist must absolutely control in the construction of the will in this case, we shall give this rule a full consideration.

While it is true that it is still in force in this State, nevertheless, it has been materially modified by our legislature, and as now recognized by this court it will not be permitted to defeat the intention of a testator, where his intention can reasonably be discovered from the will itself. Or, in other words, the rule in question is not, as appellants insist, an inflexible one of law, but is one of construction, and cannot be permitted to prevail over the intention of the testator, but is subordinate to such intention, and can operate only in connection with other well-settled rules applicable to the construction or interpretation of wills.

It is certainly true that a court in construing a will is not to be controlled by the bare provision therein devising the lands, which does not name the interest intended to be taken by the devisee, and hold that such devise must be limited or confined to a life estate only, without regard to or con-

sideration of other provisions, clauses or terms of such instrument. Wills are not to be so construed.

Section 3123 Burns 1908, §2567 R. S. 1881, which is a part of the statutes of this State pertaining to wills, provides that "every devise, in terms denoting the testator's intention to devise his entire interest in all his real or personal property, shall be construed to pass all of the estate in such property, including estates for the life of another, which he was entitled to devise at his death." This section provides a rule of construction, and appellants' counsel apparently overlook the fact that the common-law rule for which they contend has been thereby modified, and that the intention of the testator, when ascertained, must prevail, notwithstanding said rule. *Korf* v. *Gerichs* (1896), 145 Ind. 134; *Mills* v. *Franklin* (1891), 128 Ind. 444.

In *Korf* v. *Gerichs, supra,* the court, speaking by Hackney, J., after referring to and quoting from §3123, *supra,* said: "While this statute does not defeat the common-law rule, it implies that that rule shall not prevail as against the intention of the testator 'to devise his entire interest.' The rule that the testator's intention shall prevail, notwithstanding the common law, has been applied in this State. *Ross* v. *Ross* [1893], 135 Ind. 367; *Mills* v. *Franklin* [1891], 128 Ind. 444; *Morgan* v. *McNeeley* [1891], 126 Ind. 537; *Patterson* v. *Nixon* [1881], 79 Ind. 251. That it is the general rule for the construction of wills that the intention of the testator is of first importance, is without question. One rule of intention is that a testator will not be presumed to have intended partial intestacy, unless the language of the will compels such construction. * * * This rule has been applied to defeat that of the common law, above referred to in *Morgan* v. *McNeeley, supra,* and *Mills* v. *Franklin, supra.* Partial intestacy would be written upon each of the three devises to the appellees, if the appellant's contention should control. * * * In speaking of the rule of the common law, this court said in *Roy* v. *Rowe* [1883], 90 Ind.

54: 'This rule often operates in contradiction of the rule
that the testator's intention shall prevail, especially in the
case of wills made by persons unskilled in the law; for the
common mind will usually suppose that a general devise,
without limitation, carries the whole estate of the testator.
Therefore, if the will contain any expression, in addition to
the general devise, indicating an intention to pass a fee
simple, the court will use this to bear out the intention;
though it must, in some way, affirmatively appear, courts
are easily satisfied that an estate of inheritance was intended.
*Cleveland* v. *Spilman* [1865], 25 Ind. 95. They are always
ready to adopt any plausible excuse for rescuing particular
cases from the wrong direction, which the general rule would
give them. 2 Redfield, Wills [3d ed.] *327.' We think, in
view of the statute above quoted, that this proposition could
have been made even stronger by stating that the common-
law rule will not be allowed to defeat the testator's intention,
where that intention can be otherwise reasonably ascertained.
The common-law rule at most is but a guide to the ascer-
tainment of the testator's intention, and it must take its
place in connection with the other established rules for like
purpose. To give that rule the control of the question made
by the appellant, would set at naught the rule against partial
intestacy."

The argument of appellants' counsel, that the rule in
question is one of law and not of construction, is certainly
refuted by the holding of this court in the case of *Korf* v.
*Gerichs, supra.* As there said, it is, at most, "but a guide to
the ascertainment of the testator's intention, and must take
its place in connection with other established rules for like
purpose."

In the case of *Mills* v. *Franklin, supra,* this court also
considered the rule as one of construction, for it is there
said: "Admitting that this rule of construction is in force,
as stated in *Roy* v. *Rowe* [1883], 90 Ind. 54, yet it is a some-
what technical rule of construction, and is not applied where

the other expressions and language of the will indicate an intention of the testator to pass a fee simple, and due consideration must be given to other well-settled rules of construction."

One of the infirmities that impress the argument of appellants' counsel is their effort to make a will for the testator according to their own views, instead of properly construing the one he actually made. Turning again to the provisions of the will of James W. Brown, it will be seen that after making a devise of the life estate to his wife under item one, he then, in item two, positively directs that upon her death "all of the property" devised to her for her own use and benefit during her life, that shall be remaining, shall be divided into eight equal parts, etc., and go to the beneficiaries therein named— kindred of his own blood. Evidently what he meant by the word "remaining," was the remainder over of the lands devised to his wife, that she had not sold and used the proceeds thereof for her maintenance and support, under the power with which she was invested. By the language all "which shall be remaining shall be divided into eight equal parts," and one-eighth given to the devisees as therein mentioned, the intention of the testator to vest the fee is evident, and therefore may be said affirmatively to appear.

The fact that said decedent made a will creates a strong presumption of his intention to devise his entire interest in all his property, both real and personal, which he was entitled to devise at the time of his death. This fact, coupled with the further fact that he made no provision or gave no direction that the part of his estate which he devised to appellees—the kindred of his own blood —should at any time pass beyond them, indicates that he intended them to enjoy the property given to them absolutely. *Roy* v. *Rowe, supra; Mills* v. *Franklin, supra.*

It is unreasonable to argue that he, in the disposition of his property, intended to create two life estates, one in favor

of his wife, and the other in favor of the appellees, making no testamentary disposition whatever of the fee of his valuable real property; or, in other words, leaving it to be controlled by the law of descent.

Referring again to the introductory clause of this will, it will be observed that the testator thereby declares his intention to dispose of his property; not merely a portion thereof, but, as he declares, "my property," manifestly meaning all his property. According to the meaning of the term "disposition," it was his purpose to distribute all his property under and by the written instrument that immediately followed this introductory clause, which instrument or document he declared to be his last will.

In the case of Pattison v. Doe (1855), 7 Ind. 282, the will there involved was executed by Edward Pattison in 1827, when the common-law rule was in force in this State. By this will the testator devised to each of his seven sons a tract of land, reserving a life estate in one tract to his wife. He also gave specific and pecuniary legacies to his two daughters. The will contained a residuary clause disposing of the remainder of his property. By the fourth item of his will he devised to his son James Pattison a certain described tract of land, without naming the interest intended to be passed. In an action involving this will, the lower court held that James Pattison took a life estate only under the devise in question. On appeal, the judgment below was held to be erroneous, and a reversal followed. In that case this court said: "The will disposed of the entire estate of the testator; and it would be subversive of the first and most obvious rule of construction, that is, the intention of the testator, to hold that a life estate only passed by the devise. * * * If, upon examining the entire will, the intention to pass a fee is apparent, a fee will pass, although the word heirs is not used. Doe v. Harter [1845], 7 Blackf. 488. That such was the intention of the testator appears from the fact already adverted to, that he disposed of all

his property; and from the fact that the devises are all alike, the word heirs not occurring in the entire will."

Without any further comment, we are satisfied that the conclusion we reached in the former hearing, that appellees took a fee in the property devised to them by the will of James W. Brown, was correct. We again affirm, for the reasons stated in our original opinion, that no question for the taxation of costs is presented.

Appellants in their petition also request a rehearing in this cause in respect to the will of Agnes C. Brown. Under our holding, however, we are fully satisfied that her will was properly construed, and that no reasons are presented for a rehearing upon the construction of her will.

Appellants' petition for rehearing is in all things overruled.