FITE
v.
DOE.

——————

# FITE *v.* DOE, on the several Demises of Bingham and Others.

The conveyance of real property, if there be an adverse possession at the time, is void at common law as an act of maintenance.

A conveyance, executed in pursuance of a previous contract, cannot relate back to the date of the contract, to the prejudice of strangers.

If *A.* convey land to *B.* by a deed which is regularly recorded, and afterwards convey the same to *C.*, the possession of the latter, *claiming only under his deed from A.*, cannot be set up as adverse, either to defeat a subsequent conveyance by *B.*, or by any person claiming under *B.*

An omission of the *quod recuperet terminum,* in a judgment in ejectment, is only a clerical mistake, and may be amended in the Court below after error brought.

In ejectment on several demises of separate tracts of land, laid in different counts, if there be proof of one count only, the verdict should be in favour of the plaintiff on that count, and of the defendant on the others. But

if; in such a case, there be a general verdict of guilty, judgment may be tak-
en on the count proved, and a *nolle prosequi* entered as to the others.

FITE
v.
DOE.

*Tuesday,
November 6.*

ERROR to the *Clark* Circuit Court. Ejectment. The de-
claration contained three counts on several demises of separate
lands: one demise by *Bingham* in 1810; one by *Johnson* in 1818;
and one by *Wyatt* and *Howk* in 1819. Plea, not guilty. The
evidence was as follows: In *August*, 1809, *Lemon*, being in
possession, conveyed the premises to *Bingham;* in *July*, 1818,
*Bingham* conveyed them to *Johnson;* and in *April*, 1819, *John-
son* conveyed them to *Wyatt* and *Howk.* These deeds contain-
ed the usual covenants, purported to have been made for a va-
luable consideration, and were recorded within one year
from their dates. *Fite*, the defendant below, in 1813 or 1814,
took possession of the premises under a contract with *Lemon* for
the purchase, and continued in possession till the trial. The
latter, in pursuance of his contract, conveyed to the former by
deed dated the 13th of *January*; 1819, and recorded the same
day. On the 29th of *January*, 1819, the premises were attach-
ed as *Bingham's* at the suit of *Lemon;* and, in 1820, judgment
was rendered on the attachment, execution issued, the land sold
at sheriff's sale to *Lemon*, and the deed made to him. Upon
this testimony, the defendant below moved the Court to instruct
the jury, that he had an adverse possession when the convey-
ances were made by *Bingham* to *Johnson*, and by the latter to
*Wyatt* and *Howk*, which rendered them void; that the judgment,
and the sheriff's sale and deed, under the attachment, divested
*Bingham* of all title, there being no objection to the sufficient
formality of the deeds and the record of the judgment; and
that the jury should, on these grounds, find for the defendant.
These instructions were refused; a general verdict of guilty
was given, with nominal damages; and a judgment rendered for
damages and costs.

BLACKFORD, J.—There are two errors assigned for the rever-
sal of this judgment; first, the refusal of the Court to instruct
the jury as required; secondly, the omission in the judgment
respecting the term. The declaration contains three several
demises to the plaintiff below: one from *Bingham;* one from
*Johnson;* and one from *Wyatt* and *Howk.* If any of these lessors
had a right to make the lease at the date of his demise, and had
a right of entry at the time this action was commenced, the
plaintiff was entitled to recover; and the Court was right in

refusing to instruct the jury to find for the defendant. The premises in dispute were, in 1809, by general warranty deed, and for a valuable consideration, conveyed to *Bingham*, one of the lessors, by *James Lemon*, who was then in actual possession, and whose title is on all hands admitted. We are not informed who actually occupied the premises immediately after this bargain and sale; but the use passed by the deed to the bargainee, and the statute transferred to him the legal possession. That, by virtue of this conveyance, a good title was transferred to *Bingham*, is not questioned by either of the parties. It appears from the record that *Bingham*, in 1818, sold and conveyed the premises to *Johnson*; and that *Johnson*, in 1819, sold and conveyed them to *Wyatt* and *Howk*. These deeds of conveyance, if not void on account of a prior disseisin, sufficiently prove that neither *Bingham* nor *Johnson* had a subsisting title at the time this action was instituted; and that, of course, under neither of their demises could the plaintiff have judgment. The defendant, however, contends that he had an adverse possession of the premises at the date of those deeds, and that consequently they were null and void. We have no particular statute, prohibiting the buying and selling of pretended titles; and therefore reference must be had for the doctrine to the common law of *England*, which is adopted into our code. The statute of Hen. 8., on this subject, is said to have been enacted in affirmance of the common law; and to have made no alteration in it, except that of adding a new penalty. That statute, therefore, and the construction put upon it a few years after its enactment, in the case of *Partridge* v. *Strange*, Plowd. 77, furnish the necessary information. The law undoubtedly is, that if a person out of possession convey to a stranger land held at the time adversely by another, the conveyance is void as an act of maintenance. Co. Litt. 369.—9 Johns. R. 55.

The defendant was in possession at the date of the deeds to *Johnson* and to *Wyatt* and *Howk;* but whether that possession was hostile to the title of the grantors, is the question upon which this part of the case depends. It is proper to premise, that an adverse possession must, in all cases, be strictly proved; for the presumption always is, that the possession is in accordance with the regular title, until there is clear and positive evidence to the contrary. This remark is particularly applicable to the situation of the landed property, and the habits of the people, in a

17

newly settled country. If, after the execution of the deed to *Bingham* in 1809, *Lemon* was permitted to continue in posses= sion, it must have been as a tenant under his grantee; and, as there is no evidence to the contrary, the fee simple must be pre= sumed to have continued in *Bingham* until his deed to *Johnson* in 1818. *Fite*, the defendant, entered into possession in 1813, under a contract with *Lemon* for the purchase; and so continued until *January*, 1819, when *Lemon* executed to him a conveyance for the premises. During this period, the defendant, at most, was tenant at will to *Lemon*, supposing that *Lemon* could have crea= ted such a tenancy. But it was said at the bar, that the deed to *Fite* in 1819, would relate back to the time of the contract in 1813. This however is a mistake, as to the extension of such relation to the injury of strangers, whatever the doctrine may be when confined to the same parties. *Jackson* v. *Bard*, 4 Johns. R. 230. At the date of the deed, therefore, from *Bingham* to *Johnson*, in 1818, the possession of *Fite* was only the possession of *Lemon*, who was himself nothing more than a tenant to *Bing- ham*; and, of course, that deed can in no way be rendered void by such a possession. As this conveyance from *Bingham* to *John- son* is good, and was executed a considerable time before the levying of the attachment against *Bingham*, it follows that no claim from the sheriff's sale of the premises under that attach- ment, can interfere with the plaintiff's right to recover on the second or third counts of his declaration.

In *April*, 1819, *Johnson* conveyed to *Wyatt* and *Howk:* but as *Fite* was then in possession, claiming as his own, under a convey- ance in fee simple from *Lemon*, it is contended that such posses- sion was adverse to all the world; and that the conveyance of the premises by *Johnson* was, by the common law prohibiting the sale of pretended titles, necessarily void. It has been already observed, that if *Lemon* continued to occupy after he sold and conveyed to *Bingham*, it was as a tenant, and must have been for years, at will, or at sufferance. The time has been when such a tenant by a feoffment with livery of seisin, would have made his feoffee tenant of the freehold by disseisin; and as such a fe= offee would have been a good tenant to a demandant's præcipe, it follows that he would have had an adverse possession. Co. Litt. 330, b, note 1. But it may well be doubted, whether this doc- trine has not passed away with the feudal times in which it ori- ginated. *Taylor* v. *Horde*, 1 Burr 60.—*Doe* v. *Horde*, Cowp.

689. At any rate, in the present case, where the conveyance of the tenant was by the common assurance of bargain and sale, without the solemnity and notoriety of the feudal investiture by livery of seisin, which always accompanies a regular feoffment; and where, too, this conveyance of *Lemon* to *Fite*, was in direct opposition to his own deed to *Bingham*, previously executed and enrolled according to our statute, it seems to the Court, that, in this view of the case, the defendant could have had no just pretensions to a possession, adverse to the title of *Johnson*, the grantee of *Bingham*. Perhaps, however, as the record is silent, *Lemon* did not continue to occupy after the date of his deed to *Bingham*. That presumption will not vary the case. If *Lemon* was not in as a particular tenant, he had no interest at all in the premises. He could not by a wrongful entry, and an actual ouster of the freehold, become a disseisor in spite of the owner; because, by his own previous deed to *Bingham*, he was estopped from setting up any hostile claim to a title which he himself had lawfully made. *Allegans contraria non est audiendus.* Co. Litt. 352, a.—2 Bl. Comm. 299.—Cowp. 600. *Fite*, as the grantee of *Lemon*, is privy in estate; and, *pretending to no other right of possession than that derived from Lemon*, he is equally bound by the estoppel; and must, in this respect, stand in the same situation with his grantor; for not only parties, but privies, whether in blood or in estate, are bound by estoppels. Co. Litt. 352. —4 Co. R. 53. Thus, where the ancestor is estopped, the heir shall be estopped, for land in fee, if he claim from no other. 10 Vin. 478. An assignee of a lease by indenture, is estopped by the deed which estops his assignor. 2 Taunt. 278. So the vendee of land, claiming only under his vendor, must be bound by the estoppel of the latter. One reason for this is, that the grantee, having no title but that derived from his grantor, cannot stand in a better situation (1). By the previous deed therefore from *Lemon* to *Bingham*, both *Lemon* himself, and *Fite* his grantee, are estopped from setting up against *Bingham* any adverse possession. It is equally certain that they could have no possession adverse to *Johnson* to whom *Bingham* conveyed, because, not only parties, but privies, may take advantage of estoppels. 10 Vin. 451. *Bingham* can point to his prior deed from *Lemon* as an estoppel against any adverse claim, afterwards set up by *Lemon* himself, or those claiming under him; and *Johnson*, as the grantee of *Bingham*, is privy in estate, and, as such, is enti-

Nov. Term,
1821.

FITE
v.
DOE.

tled to the same benefit from the law of estoppels as his grant-or. Thus in *Palmer*, assignee, v. *Ekins*, in covenant on a lease, it was adjudged, that as the defendant was estopped by her indenture from pleading *nil habuit in tenementis* against the lessor, she was equally estopped by her deed from that plea against the assignee of the lessor. 2 Ld. Raym. 1550. So here, *Fite* was estopped by his grantor's deed from setting up an adverse possession against *Bingham*, the original grantee; and he is e-qually estopped by that deed from setting up an adverse possession against *Johnson*, the grantee of *Bingham*. Where the estoppel works on the interest of the land, it runs with the land in whose hands soever the land comes. 1 Salk. 276.—Str. 818. Had *Fite* taken possession of the property as his own, under colour of title from any other source than that from which the plaintiff claims, his possession, if found to be really and strictly adverse to the title of the lessors of the plaintiff, might have reduced the claims of the rightful owner to a mere right in action, not assignable by the common law; and might have rendered his conveyance void, made during the existence of such hostile possession. Instead of that, however, the contract by which the defendant entered, and the deed by which he continued in possession, abundantly prove his pretensions to the premises in dispute to be in perfect subserviency to the title of *Wyatt* and *Howk*, under whose demise the plaintiff claims in the last count of his declaration. We think, therefore, that the Circuit Court acted correctly in refusing to give the instructions to the jury, which the defendant required (2).

The second error assigned is, that judgment is rendered only for damages and costs, instead of being in the usual form, *quod querens recuperet terminum*. Such an omission is nothing more than a misprision of the clerk, and might be amended. 2 Vin. 310.—1 Bac. 165. But this circumstance is not material in the present case; for supposing the judgment to be in the usual form on the general verdict of guilty, it is in favour of the plaintiff for the three distinct terms in the three separate lots of ground described in the several counts of the declaration. The record shows that none of the lessors but *Wyatt* and *Howk*, had any title to any of the premises at the time this action was commenced; and that the verdict and judgment should have been for the defendant on the two first counts, and for the plaintiff on the third one. If the plaintiff would avail himself of any bene-

fit under this general verdict, he should enter a *nolle prosequi* as Nov. Term, to the two first counts, and take his judgment on the last count **1821.** only.

Per Curiam.—The judgment is reversed, and the proceedings subsequent to the verdict are set aside, with costs. Cause remanded, &c.

*Nelson,* for the plaintiff.

*Howk,* for the defendant.

(1) It will be observed, also, that the deed from *Lemon* to *Bingham* was duly recorded; and therefore *Fite* was a purchaser with notice. Now, there is no clearer principle than that such a purchaser cannot be in a better situation, than the person from whom he derives his title. *Hughes* v. *Edwards,* 9 Wheat. 489, 499.

(2) A father devised a tract of land to his son *A.,* his heirs, &c. forever, and another to his son *B.* his heirs, &c.; adding, that if either died without issue, his part should go to the survivor. *A.'s* part was sold on judgments and executions against him, and the purchaser took and kept possession. Afterwards *A.* died without issue, and *B.* claiming as survivor, devised the whole of the property. *Held,* that, in *New-York,* the limitation over to *B.* was good as an executory devise; and that the *adverse possession* of the purchaser at sheriff's sale, did not prevent the operation of the devise in the will of *B.* *Waring* v. *Jackson,* 1 Peters, 570.

In *Pennsylvania* there is the following decision:—*Per Curiam,* Without entering into the consideration of the law of *England,* it may be affirmed with certainty that the law as held there was never adopted here. From the equality of condition of persons in this country, there was no danger of maintenance from the interference of powerful individuals; and the abundance and cheapness of land rendered it necessary to admit of its transfer with almost the same facility as personal property. For these reasons, when deeds and devises of land have been considered in our Courts, it has never been made a question whether the grantor or devisor was in or out of possession; and to make it now would disturb what has been looked upon as settled. *Stoever* v. Lessee of *Whitman,* 6 Binn. 416.