No. 8147.

## PATTERSON *v.* NIXON ET AL.

PARTITION.—*Estoppel.*—*Vendor and Purchaser.*—*Adverse Possession.*—An answer in partition, that the defendant had purchased the lands in good faith and for a valuable consideration, and that before such purchase, and before any conveyance to the plaintiff, the grantor of the plaintiff informed him that he had no interest in the land, by reason whereof, and relying thereon, the defendant purchased and was in possession adverse to all others, and claiming as owner when the plaintiff took conveyance, is insufficient on demurrer.

SAME.—*Champerty.*—*Tenants in Common.*—*Conveyance.*—The possession of a tenant in common of lands, who has ousted his co-tenant, and holds adversely to him, does not impair a conveyance by the latter of his share, the doctrine of *champerty* having no application to such cases.

WILL.—*Construction.*—*Title to Real Estate.*—A testator devised his farm and certain property to his wife for life, and "at her death the farm to belong to my son, Thomas J.," together with certain personal property.

After certain other specific devises and bequests, the will proceeded: "and the balance of my —— is to be sold and turned into money, and debts owing to me collected and then put to interest to educate my daughters and son Thomas J. equally, and the principal is to be divided in the following manner: My son Thomas J. is to have two shares, and each of the girls one share; if any of the last named seven daughters or my son Thomas J. should die before they come of age, then their part is to be divided among the other seven."

*Held*, that Thomas J. took the farm absolutely in fee simple, though he died before reaching his majority.

From the Pike Circuit Court.

*E. A. Ely* and *C. H. Burton*, for appellant.

*F. B. Posey* and *J. W. Wilson*, for appellees.

WORDEN, J.—Action by the appellant against the appellees for partition. The complaint, after entitling the cause and stating the names of the parties, was as follows:

"The plaintiff complains of the defendants, and says that she and they are the owners in fee simple and tenants in common of the following described real estate situated in Pike county and State of Indiana, to wit:" (description.) "That one Thomas J. Conger departed this life intestate, and seized in fee simple of said real estate, on the 1st day of March, 1856, leaving neither widow nor children surviving him, but leaving as his only heirs at law Matilda Conger, his mother, William J. Conger and Jonathan, his brothers, Margaret Conger, Matilda Chappell, Melissa Brenton, Indiana Nixon and Hester Conger, his sisters, and Matilda Hughan, Agnes Hughan, Jesse Hughan and Alexander Hughan, Jr., his nephews and nieces, the children of Polly Hughan, his deceased sister. That William J. Conger aforesaid conveyed his interest, to wit: one-sixteenth part in value of said real estate to one John Conger, on the 29th day of July, 1871, who bequeathed the same by his last will and testament to the plaintiff, and departed this life on the 27th day of February, 1876, testate. That afterwards on the 29th day of February, 1876, said will was duly probated. That said Matilda Conger, Matilda Chappell, Melissa Brenton, Margaret Conger and Hester Conger,

conveyed their entire interest in said real estate to the defendant William Nixon, prior to the beginning of this suit. That said Jonathan Conger departed this life intestate prior to the beginning of this suit, leaving as his heirs at law the defendant Hannah Conger, his widow, and the other defendants (save the Nixons and Hughans), his children. That the plaintiff is the owner of the undivided one-sixteenth part in value of said real estate, and derived her title thereto by will, from John Conger, deceased, as aforesaid, who derived his title from one William J. Conger by deed, who derived his title by descent from his brother, said Thomas J. Conger, deceased. That the defendants Hughan (save Alexander Hughan, Sr.,) (said Alexander Hughan, Sr., claims an interest in said real estate and is made defendant herein to answer to his interest if any he has) are the owners of the undivided one-sixteenth part thereof, and derive their title by descent from said Thomas J. Conger. That the defendant Indiana Nixon is the owner of the undivided one-sixteenth part thereof, and derived her title by descent from said Thomas J. Conger, deceased, and the defendants Conger are the owners of the undivided one-sixteenth part thereof, and derive their title by descent from Jonathan Conger aforesaid, deceased, who derived his title by descent from said Thomas J. Conger, deceased; and the defendant William Nixon is the owner of the undivided three-fourths part thereof, and derived his title by conveyance and purchase from Matilda Conger, Margaret Conger, Matilda Chappell, Melissa Brenton and Hester Conger aforesaid, who derived their title from said Thomas J. Conger, deceased. Wherefore," etc.

The second and fourth paragraphs of the answer by William Nixon were as follows:

"Paragraph 2d. And for further answer to plaintiff's complaint the defendant William Nixon says, that he purchased the lands mentioned in the plaintiff's complaint, in good faith from the parties therein mentioned, and paid a valuable consideration therefor. That he was informed by the William

J. Conger mentioned in said complaint, through whom plaintiff claims title, before he, defendant, became purchaser thereof, and before the deed to John Conger, mentioned in plaintiff's complaint, was executed, that he, the said William J. Conger, had no interest in said lands, and by reason of said information, and relying thereon, the defendant purchased said lands; and at the time of the execution of the deed from William J. Conger to John Conger, mentioned in the plaintiff's complaint, the defendant was, and for a long time prior thereto had been, in the possession of said real estate, claiming to own the same adversely to all others.

"Paragraph 4th. The defendant William Nixon, for further amended answer to plaintiff's amended complaint, says, that at the time William J. Conger made said conveyance of said real estate, in plaintiff's complaint mentioned, to said John Conger, he, the said Nixon, was, and had been long prior thereto, in peaceable possession of said land, claiming to own it adversely to all others. That the relation of tenancy in common, or any other relation of tenancy among or between said defendant and plaintiff in plaintiff's complaint, did not exist at the time said William J. made said conveyance to said John Conger. That said William Nixon had, a long time prior thereto, ousted all the parties in the plaintiff's complaint mentioned, other than himself, from said land, and was occupying and claiming to own it adversely to all the world. Wherefore," etc.

The plaintiff demurred to these paragraphs of answer severally, for want of sufficient facts, but the demurrers were overruled, and such further proceedings were had as that judgment was rendered for the defendant.

Error is assigned upon the rulings on the demurrers.

The second paragraph of answer was clearly bad, and the demurrer to it should have been sustained. It attempted to set up matter of estoppel.

It does not appear from the paragraph, when the defendant was informed by William J. Conger that he had no interest

in the lands, except that it was before the defendant pur-
chased and before the deed to John Conger. For aught that
appears it may have been before the death of Thomas J. Con-
ger, and, therefore, before any portion of the land had de-
scended to William J. Conger.

But aside from this the paragraph is radically defective.
It does not appear either:

1. That the statement of William J. Conger was made
with knowledge of the facts;

2. That the defendant was ignorant of the truth of the
matter; or,

3. That it was made with the intention that the defendant
should act upon it. See Hosford v. Johnson, 74 Ind. 479;
Lee v. Templeton, 73 Ind. 315.

We have not considered whether the paragraph was suffi-
cient in other respects.

The fourth paragraph was intended to show that at the time
of the conveyance from William J. to John Conger, the land
was in the adverse possession of the defendant, assuming,
therefore, that the conveyance was void, and that John Con-
ger had no title to devise to the plaintiff.

The paragraph does not profess to set up any title in the
defendant to the portion of the land claimed by the plaintiff,
and, unless the matters alleged show that the plaintiff has no
title, the pleading is bad.

From an early period the general doctrine has prevailed in
this State, that a conveyance of land in the adverse possession
of another person is void as against the person thus having
the adverse possession. Fite v. Doe, 1 Blackf. 127; Martin
v. Pace, 6 Blackf. 99; Galbreath v. Doe, 8 Blackf. 366; Mi-
chael v. Doe, 1 Ind. 481; The German Mutual Insurance Com-
pany of Indianapolis v. Grim, 32 Ind. 249; Steeple v. Down-
ing, 60 Ind. 478. But the doctrine has no application to ju-
dicial or official sales. McGill v. Doe, 9 Ind. 306; Webb v.
Thompson, 23 Ind. 428; Vannoy v. Blessing, 36 Ind. 349.

In Webb v. Thompson, above cited, the court said: "It is

not the inclination of the courts in this country to carry the doctrine of champerty any further than it has already gone."

The doctrine has but little to support it in this country, except that it is an established rule drawn from the jurisprudence of the mother country, and has been constantly adhered to in this State from the time of its organization.

Chancellor Kent says: "The ancient policy which prohibited the sale of pretended titles, and held the conveyance to a third person of lands held adversely at the time to be an act of maintenance, was founded upon a state of society which does not exist in this country. A right of entry was not assignable at common law, because, said Lord Coke, 'under color thereof, pretended titles might be granted to great men, whereby right might be trodden down, and the weak oppressed.'" 4 Kent Com. 447, 12th ed.

The rule has been shorn of some of its harsh features, it having been decided that, though such conveyance is void as against the party in possession, it is good between the grantor and grantee, and persons standing in legal privity with them; and that the grantee in such case may use the name of his grantor in an action to recover the land, and the recovery will enure to the benefit of the grantee. *Steeple* v. *Downing, supra.*

But the rule, in our judgment, should have no application whatever to the case of a possession by one tenant in common, adverse to his co-tenant.

There may, to be sure, be an ouster of one co-tenant by another, so that the statute of limitations will run in favor of the latter. But, as was said in the case of *Jenkins* v. *Dalton,* 27 Ind. 78, "It is well settled that the possession of one tenant in common is constructively the possession of all, the possession of one being deemed to be for the benefit of himself and his companions; and that to disseize his co-tenants, there must be an actual ouster, or such acts as are constructively equivalent to an ouster, and from which an ouster may be presumed."

In *Bowen* v. *Preston,* 48 Ind. 367, the law on the subject is

thus stated : " It is also a rule of law that the seizin of one joint tenant is the seizin of his companions as well as of himself. The same rule is applied to co-parceners and tenants in common. The possession of one of them is constructively the possession of all ; and hence it seems to follow, that possession or seizin of one will be the seizin of others as against all strangers ; and the possession of one will constructively be held for the benefit of himself and of his companions. To disseize his companions there must be an actual ouster, or there must be such acts as are constructively equivalent to an ouster ; as the denial of right to the rent of any part, or the possession of any part, of the land, or an exclusive possession for a long time, so as to afford the presumption of a disseizin." See also *Nicholson* v. *Caress,* 59 Ind. 39.

Now, it seems to us to be clear that when one proposes to purchase the interest of a parcener or tenant in common in land which is in the possession of a co-parcener or co-tenant, he may assume, and act upon the assumption so far as the question of maintenance is concerned, that the possession of the one is the possession of all, and for the benefit of all, whatever the real facts may be as to the character of the possession.

When a purchase is made of land in severalty, which is in the possession of another, the possession is not only notice generally of the rights of the latter therein, but if the possession is adverse, though without right, the conveyance is void as to him. In such case there is nothing to indicate to the purchaser that the person in possession is holding for any one but himself. Not so, however, with the possession of a co-tenant, for until there is an ouster, actual or constructive, of which the purchaser is not bound to take notice, the possession of the one is deemed the possession of all.

It follows that the fourth paragraph of answer was insufficient, and that the demurrer to it should have been sustained.

The appellees have assigned a cross error upon the sustaining of a demurrer to the first paragraph of their answer.

That paragraph was designed to show that by the will of Sebastian Conger, the father of Thomas J. Conger, deceased, the latter having died, as is alleged, before he was twenty-one years of age, the said Thomas J. did not receive title to the land, but that it went to his sisters, under whom the defendant Nixon claims. So much of the will as is necessary to an understanding of the point is as follows:

"First. I give and bequeath to my beloved wife, Matilda" (here certain articles of personal property are mentioned, then the will proceeds), "and the farm her lifetime, and at the time of her death the farm is to belong to my youngest son, Thomas J., and all the sheep and two pairs of horse-gears, double-trees, single-trees and all the household and kitchen furniture, the wagon and flax brake, all the leather that is at Hillman's tan-yard and a side of leather at J. Davidson's, is to belong to my wife. My son Jonathan has received his full dowry. I give and bequeath to my second son, W. J. Conger, two pieces of land east of J. G. Crow's land in the bottom, one hundred acres. I give and bequeath to my third son, John, a piece of land containing one hundred and ten acres and a fraction, in section 13, town. 1 N., R. 9 W.; one horse, saddle and bridle and some hogs that is called his property. The debts that I owe John Logan is to be paid by my wife, Matilda, and she is to have all the poultry of every kind, and the balance of my —— is to be sold and turned into money, and debts that is owing to me is to be collected and then put to interest, to be used to educate my daughters and my youngest son, Thomas Jefferson, equally, and the principal is to be divided in the following manner: My son, T. Jefferson, is to have two shares and each of the girls one share each. If any of the last named seven daughters, or my son, Thomas Jefferson, should die before they come of age, then their part is to be divided among the other seven. * * * I add a codicil to my will, that my son, John, have a cow and calf; I also wish my youngest son, T. Jefferson, to have fifty dollars over and above what I have

already given him for education, out of the interest that will be derived from my property and debts due me."

It will be seen by the forepart of the will, that the farm was bequeathed to the testator's wife for life, and at her death to go to Thomas J.

The appellees claim that the clause, providing that if any of the seven daughters, or Thomas J., should die before coming of age, "their" part is to be divided among the other seven, was intended to embrace the farm.

But we can not give the will such construction. The obvious meaning of the will is, that the part of the one that should die, in the fund that was to be raised and put at interest for the education of Thomas J. and the daughters, should be divided among the other seven. The will did not contemplate the division of the farm among the daughters in the event that Thomas J. should die before coming of age.

No error was committed in sustaining the demurrer to the paragraph.

For the errors committed against the appellant, the judgment must be reversed.

The judgment below is reversed, with costs, and the cause remanded for further proceedings in accordance with this. opinion.