GIBSON ET AL. *v.* BROWN ET AL.

[No. 8,594. Filed December 17, 1915. Rehearing denied June 2, 1916.
Transfer denied June 23, 1916.]

1. WILLS.—*Construction.—Estate Devised.—Words of Inheritance.—*
A devise of real estate in general terms, unaccompanied by words
of inheritance or other language defining the quantity of the estate
to be taken by the devisee, creates only a life estate under the rule
of the common law which is in force in this state, but any additional
language in the will indicating an intention to devise a fee simple
will be given effect.    pp. 466, 473.

2. WILLS.—*Construction.—Bequest of Personalty.—Estate Granted.*

Gibson *v.* Brown—62 Ind. App. 460.

—A bequest of personal property in general terms, under both the common law and the rule in this state, is sufficient to give an absolute title.    pp. 466, 473.

3.  WILLS.—*Construction.*—*General Devise of Realty.*—*Estate Granted.*—A general devise of real estate, coupled with a general bequest of personal property, is sufficient to indicate an intention to devise the land in fee.    pp. 466, 474.

4.  WILLS.—*Construction.*—*Rules.*—*Intention of Testator.*—In construing a will, rules of construction, as distinguished from absolute rules of law, must yield to the intention of the testator when expressed or otherwise ascertained in a proper manner.    p. 466.

5.  TRUSTS.—*Nominal Trusts.*—*Statute.*—Under §4024 Burns 1914, §2981 R. S. 1881, a devise to a trustee, whose title is only nominal and who has no power of disposition or management of the lands devised is void as to the trustee and is to be deemed a direct conveyance to the beneficiary.    p. 468.

6.  WILLS.—*Construction.*—*Partial Intestacy.*—The fact that a person makes a will is some evidence of a purpose to dispose of his entire estate, and, therefore, a construction that will result in partial intestacy is to be avoided, unless the language of the will compels such construction.    p. 469.

7.  ESTATES.—*Life Estate.*—*Tenant a Trustee.*—A life tenant is a trustee for the remainderman in the sense that he must exercise reasonable precautions to preserve the property intact for transmission to the remainderman at the termination of the life estate, and he may not injure or dispose of it to his detriment.    p. 470.

8.  WILLS.—*Construction.*—*Disinheritance of Heir.*—A will should not be so construed as to disinherit an heir unless such be the plain intention of the testator as gathered therefrom.    p. 471.

9.  WILLS.—*Construction.*—*Estates Devised.*—Where a will, after directing that the testator's personal debts, funeral expenses, etc., be paid from personalty, provided that the widow take a life estate in the residue, both real and personal, and that at her death an equal division be made between a daughter and a son, designating the portion of the land the son should take, and providing that it be held by him not in fee simple, but in trust for the heirs of his body, *held* that, subject to the right of the testator's widow therein, the son took a life estate with the remainder to the heirs of his body, or an estate in fee tail, independent of §3994 Burns 1914, §2958 R. S. 1881, abolishing estates tail.    p. 471.

10.  WILLS.—*Estates Tail.*—*Statutory Modification to Fee Simple.*— Under §3994 Burns 1914, §2958 R. S. 1881, providing that estates tail are abolished, and any estate which, according to the common law, would be adjudged a fee tail shall hereafter be adjudged a fee simple, and if no valid remainder be limited thereon shall be a fee simple absolute, where a testator devised an estate in fee tail to a son, the estate granted by the will, by reason of the statute, became an estate in fee simple in such son.    p. 472.

From Steuben Circuit Court; *Louis B. Ewbank*, Special Judge.

Action by Hazel L. Gibson and others against Harry C. Brown and another. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*Bratton & Heckenlively* and *Brown & Carlin*, for appellants.

*A. C. Wood, Best & Yotter* and *Hubbell, McInerny, McInerny & Yeagley*, for appellees.

CALDWELL, J.—Appellees joined in a demurrer to appellant Hazel L. Gibson's amended complaint, and also to the respective cross-complaints of the other appellants, Weir W., Gladys Rena and Orville W. McMillan. The demurrer to each pleading was sustained, and appellants refusing to plead over, judgment was rendered against them, from which they appeal, each assigning error on the sustaining of the demurrer to his pleading.

A review of the rulings of the court involves a construction of the last will and testament of Woster McMillan, in its relation to the nature of the estate in lands thereby created in his son, Alonzo C. McMillan. The complaint and cross-complaints to which demurrers were sustained are practically identical in facts alleged, and are substantially as follows: Woster McMillan died testate in Steuben County, in February, 1881, the owner in fee of the southeast quarter of section 13, township 36 north, range 13 east in said county. He left surviving him as his only heirs at law his widow, Mary McMillan, and his children, Mary E. Van Auken and Alonzo C. McMillan, who were also the children of Mary McMillan, his widow. His last will, omitting introductory and concluding matter, is as follows:

"I desire all funeral expenses and doctor bills to be paid from my personal property, all other demands are then to be paid in full. My accounts and debts are very few and I desire to have them all honorably and fully settled.

"The residue, both real and personal shall become the property of my companion, my kind, loving, faithful wife, Mary McMillan, for the term of her natural life. At her death, I desire an equal division to be made of it between my daughter, Mary E. Van Auken, and my son, Alonzo C. McMillan, and it is my desire further that the portion of realty that shall fall to the aforesaid Alonzo C. McMillan, shall consist of the west 80 of the southeast quarter of section thirteen (13) N. Range 13 east Tp. 36, and that it shall be held by him not in fee simple, but in trust for the heirs of his body. I desire this land to be divided by even acres without regard to cash value.

"I desire no litigation after my death with regard to the disposition of my property, and should any of the heirs and legatees under this will begin such proceedings, then that one shall forfeit all claims whatsoever, and not receive any benefit from any part of my estate."

It is further alleged that the widow, by regular proceedings, elected to take the provisions made for her by statute rather than under her husband's will. Thereafter at the September term, 1882, of the Steuben Circuit Court, she, as sole plaintiff, filed her complaint for the partition of the lands of which her husband died the owner, alleging in effect that she and her two children were the owners of such lands in equal parts in fee simple as tenants in common. She named as the only defendants to the proceeding, Mary E. Van Auken and husband and Alonzo C. McMillan and wife. The parties to this appeal were not parties to that proceeding. The action for partition resulted in a judgment that the

parties were the owners of the lands as alleged, and decreeing partition, whereupon there was set off to Alonzo· C. McMillan as his one-third in value forty-eight acres off of the west side of the tract; to Mary E. Van Auken fifty-five acres off the east side, and the remaining portion to the widow. Alonzo C. McMillan, pursuant to the partition proceeding, took possession of the forty-eight acre tract, and thereafter, August 17, 1908, sold and by warranty deed, in which his wife joined, conveyed it to Maurice Lemmon for $2,500 then paid. On April 10, 1910, Lemmon sold and by warranty deed, in which his wife joined, conveyed it to appellees for $3,500 then paid. Appellees, by virtue of such conveyances, claim to own the tract in fee to the exclusion of appellants. It is further alleged that when Woster McMillan executed his will, Alonzo C. McMillan, Jane, his wife, and Orville W. McMillan, their only child, who was born in 1879, lived with Woster McMillan and his wife on the lands described in the will, and that Woster McMillan knew of the existence of Orville W. McMillan. The widow, Mary McMillan, and Jane, the wife of Alonzo C. McMillan, each died in 1883. Alonzo C. McMillan remarried in 1887, and there were born to him, as fruits of such marriage, the appellants, Hazel L. McMillan, now Hazel L. Gibson, Gladys Rena McMillan and Weir W. McMillan, the last two being less than twenty-one years of age. Alonzo C. McMillan died January 17, 1911, leaving surviving him as his only heirs at law, his children, the appellants, and his widow, Dora McMillan, mother of appellants other than Orville W. McMillan.

The respective pleadings of appellants contain the following further allegations by way of deduction from facts averred: Hazel L. Gibson alleges

that she owns the forty-eight acre tract in fee, and that Alonzo C. McMillan, under his father's will, held only in trust for her use and benefit. Orville W. McMillan alleges that the trust was for the benefit of himself and his coappellants, as heirs of the body of Alonzo C. McMillan. He asks, however, in his prayer for relief, that the court adjudge that he is the owner of the entire tract, and that Alonzo C. McMillan held it in trust for his sole use and benefit. Weir W. McMillan alleges that he is the owner of the undivided one-fourth of the tract, and that Alonzo C. McMillan held it in trust for him and his coappellants as heirs of his body. The concluding averments of the cross-complaint of Gladys Rena McMillan are similar to those of Weir W. McMillan. The prayer is to quiet title in harmony with the respective allegations. The parties concede that the lands described in the will are the lands alleged to have been owned by Woster W. McMillan at the time of his death.

Proceeding to construe the will, the testator, having provided for the payment of debts and expenses, bequeathed the residue of his personal property and also devised his real estate, or the residue thereof, if any portion of it should be used in the payment of obligations, to his wife for the period of her natural life. The will then proceeds as follows: "At her death, I desire an equal division to be made of it between my daughter, Mary E. VanAuken, and my son, Alonzo C. McMillan, and it is my desire further that the portion of realty that shall fall to the aforesaid Alonzo C. McMillan shall consist of the west 80," etc. Considering the language last quoted, disassociated from what follows, and there arises sufficient uncertainty in the mind of a prudent person respecting the quantity

of the estate in lands thereby devised to call for further consideration and possibly for explanation. Such uncertainty involves only whether such estate is in quantity for and during the life of the devisee or in fee simple. Thus the devise is in general terms unaccompanied by words of inheritance or other language defining the quantity of the estate to be taken by the devisee. Under such circumstances, the common-law rule that the devisee takes only a life estate is in force in this state. *Cleveland* v. *Spilman* (1865), 25 Ind. 95; *Mulvane* v. *Rude* (1896), 146 Ind. 476, 45 N. E. 659. However, if the will contains any expression in addition to the language of the general devise indicating an intention to pass a fee simple, the courts will give effect to such expression to carry out the intention of the testator. *Roy* v. *Rowe* (1883), 90 Ind. 54; *Fenstermaker* v. *Holman* (1901), 158 Ind. 71, 62 N. E. 699; *King* v. *Ackerman* (1862), 2 Black (67 U. S.) 408, 17 L. Ed. 292, and note. There is also a statute to that effect. §3123 Burns 1914, §2567 R. S. 1881. *Skinner* v. *Spann* (1911), 175 Ind. 672, 93 N. E. 1061, 95 N. E. 243. A bequest of personal property in general terms, both at common law, and also as announced by the courts of this State, is sufficient to give an absolute title, and, where a general devise of real estate is coupled with a general bequest of personal property, such fact is sufficient to indicate an intention to devise the lands in fee. The same language is used here is disposing of the residue of the estate, real and personal, considering only the quoted portions of the will now under consideration. *Heilman* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310; *Mulvane* v. *Rude, supra.* The rules under consideration are rules of construction rather than absolute rules of law, and as a consequence they must yield to the intention of the testator when

expressed or otherwise ascertained in a proper manner. *Skinner* v. *Spann, supra.*

Proceeding with the analysis, the only possible controversy that could arise from a consideration of the quoted provision of the will now under consideration involving the nature of the interest or estate in lands thereby created is, as we have indicated, respecting the quantity of such interest or estate; that is, whether the estate thereby devised to Alonzo C. McMillan is for life or in fee. In such quoted language there is no suggestion of an estate or interest in trust as distinguished from one devised to Alonzo C. McMillan as an individual. The thought in the testator's mind may thus be traced through the will: "In creating an estate in behalf of my son, I have used language indicating a plain intention that the quantity of such estate shall be either for life or in fee, but perhaps I have left it uncertain as to which is my purpose. I must remove this uncertainty by some appropriate expression. I shall say plainly that I do not intend for it to be a fee." He then, by the next expression in his will, gives life to such intent. This expression is as follows: "And it shall be held by him not in fee simple." The antithesis of an estate in fee simple is some estate less in quantity. The antithesis of an estate devised in trust is one devised for the individual or personal use and benefit of the devisee. As we have said, the language of the will first quoted and discussed carries with it no suggestion of an estate in trust. It suggests only an estate for the personal benefit of the devisee. If the testator in fact had in mind that the estate created should be in trust for the use of others, and if it was his purpose so to declare, and to preface his declaration with eliminating language, he did not use apt words to that end. If it was his purpose to create an

estate in which his son should have no personal interest, but which he should hold only in trust for others, it would be reasonable to presume that he would have eliminated the antithesis of such estate in trust plainly indicated by the antecedent expression. Such antithesis is, as we have said, an estate personal to the son. If he desired to use language of exclusion, he should have said: "And that it shall be held by him not for his individual use and benefit." He did say, "and that it shall be held by him not in fee simple." It therefore follows that in our judgment the fact of the negativing of the one possible quantum of estate suggested by the preceding language is equivalent to affirming the other; that the express exclusion of an estate in fee shows by implication an intent to create in the son the only other estate as to quantity that may be gathered from the antecedent language; that negativing a purpose to devise in fee is equivalent, under the circumstances, to affirming a purpose to devise for and during the life of the son; that it is a case of affirmation by exclusion. Life estates sometimes result from implication. See cases collected in note to *Hamilton* v. *Sidwell* (1909), 29 L. R. A. (N. S.) 961, 1003; also, 2 Fearne, Remainders §463.

The entire expression in which is included the language eliminating a purpose to create an estate in fee, is as follows: "And that it shall be held by him not in fee simple, but in trust for the heirs of of his body." Section 4024 Burns 1914, §2981 R. S. 1881, is as follows: "A conveyance or devise 5. of lands to a trustee whose title is nominal only and who has no power of disposition or management of such lands is void as to the trustee, and shall be deemed a direct conveyance or devise to the beneficiary." If by the concluding part of the language last quoted from the will, the testator

intended to create a trust of which others should be the exclusive beneficiaries, and of which the son should be merely the trustee rather than that he as an individual should have an interest or estate in the property involved, then under the statute, since no power of disposition or management is conferred upon the trustee, the trust is nominal, and therefore void as to the trustee. *Allen* v. *Craft* (1887), 109 Ind. 476, 9 N. E. 919, 58 Am. Rep. 425; *Stroup* v. *Stroup* (1895), 140 Ind. 179, 39 N. E. 864, 27 L. R. A. 523.

Assuming that the testator attempted to create an express trust in the lands for the use of the beneficiaries to whom reference is made as "the heirs of his body," and that such trust is void as to the trustee, and that the devise is therefore direct to the beneficiaries of the trust, still the language eliminating an estate in fee simple must be reckoned with. As in case of an individual ownership, trust estates are not necessarily uniform in quantity. Estates in fee simple for the life of the beneficiary or another, or for a term of years, may be held in trust. We should thus have an attempt to create a trust estate in lands less in quantity than a fee, the trust being executed by virtue of the statute, and the estate less in quantity than a fee simple passing direct to the beneficiaries. Under such an interpretation of the will, the fee is not devised. It results that there would be a partial intestacy. The fact that a person makes a will is some evidence of a purpose to dispose of his entire estate, and it therefore follows that a construction that will result in partial intestacy is to be avoided, unless the language of the will compels such construction. *Cate* v. *Cranor* (1868), 30 Ind. 292; *Myers* v. *Carney* (1908), 171 Ind. 379, 84 N. E. 400; *Barker* v. *Town of Petersburg* (1907), 41 Ind.

App. 447, 82 N. E. 996. There is a sense in which a life tenant is trustee for the remainderman. While he is entitled to the possession of the lands involved, and may use them for his own benefit, and appropriate to himself the proceeds arising from such use, still he holds the corpus of the estate in trust in the sense that he must exercise reasonable precautions to preserve the property intact for transmission to the remainderman at the termination of the life estate, and may not injure or dispose of it to his detriment. 16 Cyc 616. If, therefore, we assume that the intent of the testator as gathered from the will was to devise to the son an estate for and during his natural life, with remainder in fee to the heirs of his body, harmony results. Such a construction is consistent with the language that the devise was not to be in fee simple; that is, that the testator intended that the estate devised to the son was not to be in fee, but that it should be for his natural life. It is consistent with the language that the estate was to be held in trust, since, as we have indicated, the life tenant holds the body of the estate in trust for the remainderman or reversioner. In addition, such a construction results in full testacy. Moreover, while we are not informed as to the amount or value of the personal estate, there are some indications in the will that the testator doubted that there would be any portion of it remaining, after the payment of expenses, for transmission to the beneficiaries. Thus, he provided that the funeral expenses and doctor bills should be paid from the personal property, and that other debts should be paid generally. While he speaks of a possible surplus of personal property, the devise of real estate is of the residue thereof. Any other construction of the will than that we have indicated, would result in the son's interest

<span style="float:left">7.</span>

being limited to the undivided one-half of the personal property after the payment of expenses, and subject to the widow's life interest therein.

8. A will should not be so construed as to disinherit an heir unless such be the plain intention of the testator as gathered therefrom. *Butler* v. *Moore* (1884), 94 Ind. 359.

9. Thus arriving at the intent of the testator from a consideration of his will, we conclude that that instrument must be interpreted as if the lands involved, subject to the life estate of the widow, were devised to the son for and during the period of his natural life, and at his death to the heirs of his body. If we are correct thus far in our interpretation of the will, we have yet to determine what quantity of estate was thereby devised to the son, and this requires that we ascertain the sense in which the phrase "the heirs of his body", as found in the will, is used. Where either the term "heirs" or "heirs of his body" is used in a will, there is a presumption that such term is used in its technical sense, and as words of limitation, defining the quantity of the estate devised, rather than as words of purchase. This presumption can be overcome only by some qualifying or explanatory word or expression indicating that the testator intended to use the term in a popular or other than a technical sense. The phrase "the heirs of his body" as found in the will here, is used without limitation, explanation or qualification. There is nothing in the will, or any part thereof, that throws any light upon the question of the meaning intended to be assigned to such phrase, save and except what may be ascertained from the fact that such phrase is found in the will. There is no independent devise to "the heirs of his body" and no independent language is directed to the creating of an estate

for the class of persons so designated. The language that creates an estate in the son creates also in the class of persons so designated, whatever estate, if any, such class takes under the will. We therefore, hold that, independent of our statute, the will here devised to Alonzo C. McMillan an estate in fee tail in the lands involved. *Waters* v. *Lyon* (1895), 141 Ind. 170, 40 N. E. 662; *Teal* v. *Richardson* (1902), 160 Ind. 119, 66 N. E. 435; *Lane* v. *Utz* (1892), 130 Ind. 235, 29 N. E. 772; *King* v. *Rea* (1877), 56 Ind. 1; *Chamberlain* v. *Runkle* (1901), 28 Ind. App. 599, 63 N. E. 486; *Shimer* v. *Mann* (1885), 99 Ind. 190, 50 Am. Rep. 82; *Hamilton* v. *Sidwell* (1909), 131 Ky. 428, 115 S. W. 204, 29 L. R. A. (N. S.) 961, and notes at 1039, 1059, 1069, 1073.

Section 3994 Burns 1914, §2958 R. S. 1881, is as follows: "Estates tail are abolished; and any estate which, according to the common law, would be adjudged a fee tail shall hereafter be adjudged a fee simple; and if no valid remainder be limited thereon shall be a fee simple absolute." By virtue of the statute, the estate in fee tail so created in Alonzo C. McMillan became a fee simple. We therefore hold that the testator's will here created in Alonzo C. McMillan an estate in fee simple in the lands involved. See authorities last cited.

*Woodrum* v. *Kirkpatrick* (1852), 2 Swan (Tenn.) 218, is in point on a number of questions involved here. There the testator provided by his will that certain chattel property should be divided equally among his children, and that "the portions or lots which are or may be assigned to * * *, my daughters, shall be held by them for the benefit of the heirs of their bodies, not subject to be sold, bartered or traded by their husbands." In holding that the

daughters took the absolute title, rather than merely as trustees, the court says: "We cannot assent to the argument that the testator intended to convey the property to his daughters merely as trustees, to hold for the benefit of their children, giving them no estate whatever in their own right. * * * We cannot give any more force to the words 'to be held by them for the benefit of the heirs of their bodies; than we would in the words 'to be held by them and the heirs of their bodies,' or, 'to go to the heirs of their bodies.' In either event, whatever might be the intention of the testator, the case would fall within the rule in the case of *Polk* v. *Faris* (9 Yerg. [Tenn.] 210, 30 Am. Dec. 400) and the first taker would be vested with the absolute interest."

The judgment is affirmed.

## On Petition for Rehearing.

Caldwell, C. J.—An examination of the briefs filed in support of plaintiff's petition for a rehearing convinces us that we did not succeed in making ourselves entirely clear in some phases of the original opinion. Certain language of the will considered apart from what follows, in effect devises and bequeaths to Alonzo C. McMillan the undivided one-half of the residue of the real and personal estate of the testator. As indicated in the original opinion, such language constitutes a general devise of such real estate, and it is therefore

1. sufficient of itself to create in him an estate in lands only for the period of his natural life. Being coupled with a general bequest of

2. personal property, however, the power of the language of the general devise is augmented to the extent that, severed from the language immediately following, it is sufficient to create a

fee, the contrary not appearing. The rule that the fact that language bequeathing personal property in general terms is coupled with language devising real estate in general terms increases the power of the latter, is a mere rule of construction 4. that readily yields to a clearly expressed contrary intention. Such clearly expressed contrary intention is indicated by the language immediately following, towit: "And that it shall be held by him not in fee simple." Our analysis is to the effect that the testator devised real estate by the use of words, which under the common-law rule in force in this State, of themselves create but a life estate; but by recourse to such rule of construction, we should be compelled to say that a fee rather than a life estate was intended. However, the language immediately following, as above quoted, being plain and unmistakable, it becomes both unnecessary and improper to apply such rule of construction. It follows that the language of the devise must be held within the limits of its common-law potency, and that, considered in connection with the language quoted, it is sufficient to create but a life estate. It is probably more apt to state that a life estate results from construction rather than implication as expressed in the original opinion.

We do not overlook the fact that the language of the will is "not in fee simple, but in trust" etc., and that such language apparently creates an antithetic relation between an estate in fee simple and an estate in trust. Such conclusion, however, results only from a superficial examination of such language, disassociated from what precedes it. An estate in trust is not and can not be made the antithesis of an estate in fee simple. The one expression has reference to the quality of the estate;

the other to its quantity. The expression "fee simple" defines the quantity of the estate, regardless of whether it is owned individually, or held for the use and benefit of another, while an estate in trust may in quantity be a fee simple, for life or for a term of years. The provision for the division of the residue between Alonzo C. McMillan and his sister imports an estate for the individual benefit of each. There follows a clause specifying the tract devised to the former. Individual benefit is still indicated. Under the circumstances, we are firmly of the opinion that if the testator intended to create an estate in trust, rather than an estate for the benefit of Alonzo, the language "and that it shall be held by him not in fee simple" is very inapt. We adhere to our original conclusion as to the nature of the estate created.

However, a deduction conditionally made by the original opinion to the effect that any other interpretation of the will than as therein and herein indicated would result in partial intestacy, is possibly not justified. On the assumption that the testator intended to create an estate in trust rather than an estate for the individual benefit of Alonzo C. McMillan, the phrase "not in fee simple" should probably he held not to reduce the estate imported by the preceding language, but rather as used antithetically to the phrase, "but in trust." On such assumption, the estate in trust, if created, would be in quantity a fee. Such assumption, however, as we have indicated, is not allowable. In effect, we applied the rule in Shelley's Case in the original opinion in arriving at the conclusion that the will created in Alonzo C. McMillan an estate tail, and that such estate, by virtue of the statute, became a fee simple. It follows that the argument that we ran counter in part to the actual

intent of the testator is not effective. Every devise coming within the rule in Shelley's Case is controlled by it, even though the actual intent of the testator is thereby thwarted. *Bonner* v. *Bonner* (1901), 28 Ind. App. 147, 62 N. E. 497; *Hamilton* v. *Sidwell, supra,* note p. 1039.

Petition for rehearing overruled.

NOTE.—Reported in 110 N. E. 716, 112 N. E. 894. See under (1), (3) 40 Cyc 1575, 1577; (2) 40 Cyc 1607; (9), (10) 40 Cyc 1595-1602.