COIL ET AL. *v.* SCHETTER ET AL.

[No. 12,642. Filed June 24, 1926. Rehearing denied November 16, 1926. Transfer denied December 23, 1926.]

1. WILLS.—*The rule of construction of general devises of real estate has been that testator's intention shall prevail, regardless of common-law rules.*—Notwithstanding the common-law rule that a devise of land generally, without words indicating the character of the estate devised, gave only a life estate, the controlling rule of construction has been that the testator's intention shall prevail. p. 532.

2. WILLS.—In the construction of wills, partial intestacy will be avoided, if possible. p. 534.

3. WILLS.—A bequest of personal property in general terms, without indication of the character of the estate bequeathed, always gives absolute title. p. 535.

4. WILLS.—*Where a will disposes of both personal and real property in general terms, in substantially the same language, presumption is that testator intended to give absolute title to the real property.*—Where a will disposes of both personal and real property in general terms, in substantially the same language, the testator will be presumed to have intended to give all the title he had in the real estate as well as in the personal property. p. 535.

5. ADVERSE POSSESSION.—*Adverse possession of land for twenty years confers title in fee simple.*—The continuous actual pos-

session of land for twenty years by successive grantees claiming fee-simple title, they holding successively, continuously, adversely and exclusively, confers a title in fee simple.   p. 535.

6. LIMITATION OF ACTIONS.—Residence of plaintiffs in another state is not a disability that will prevent the running of the statute of limitations.   p. 535.

7. · LIMITATION OF ACTIONS.—*Section of statute of limitations relating, to nonresidents not applicable to plaintiffs.*—Section 306 Burns 1926, being one of the sections of the statute of limitations, and relating to nonresidency, is not applicable to plaintiffs.   p. 535.

8. EJECTMENT.—*Deeds of successive owners of the land constituting defendant's chain of title, with oral evidence of their adverse holding, for more than twenty years, held proper in ejectment.*—In an action of ejectment, the deeds of the successive owners of the land constituting the chain of title of the defendants who had been in actual continuous possession for more than twenty years, together with oral evidence of their adverse holding, were competent evidence· to establish their defense.   p. 536.

From Marion Circuit Court (38,138) ; *Harry O. Chamberlin,* Judge.

Action by Clayton C. Coil and others against Louis F. Schetter and others.   From a judgment for defendants, the plaintiffs appeal.   *Affirmed.*   By the court in banc.

*Galvin, West & Wilcox,* for appellants.

*Ulric Z. Wiley, James M. Berryhill, Allen P. Vestal* and *Frank Groninger,* for appellees.

NICHOLS, J.—This was an action in ejectment by appellants to recover ten acres of land.   There was a special finding of facts and conclusions of law in favor of appellees, upon which judgment was rendered.   The errors assigned are the action of the court in overruling appellants' motion for a new trial, and in the conclusions of law.   It appears by the special findings that Jacob Coil, a resident of Marion county, Indiana, died testate in said county sometime prior to January 16, 1838.   That said Jacob Coil, at the time of his death,

was the owner in fee simple of the real estate here involved and other real estate, in said county. After providing for his burial and the payment of his debts, he then provided "as to my worldly estate, as it has pleased God to intrust me with, I dispose of the same in the following manner, to-wit:

"* * * I also direct that Phebe Miller, formerly Phebe Coil, my daughter, shall have the land where she is now living with her husband, Michael Miller, with the exception of a small lot which I sold to Flood and Guyer, and it is my desire that the land willed to Phebe shall remain in the hands of Phebe, my daughter, and her heirs and all the appurtenances thereunto belonging as her full part of my real estate, and Jacob Coil, Junior, my son, to have the place where I now live near the Broad Ripple of White River, and one wagon, two yokes of oxen and the Executor to take three hundred dollars of the sale of town lots which is taken from the tract of land which I will to my son Jacob and said three hundred dollars to be equally divided among the rest of the heirs; and Sabina Coil, my daughter, to have eighty acres of land which I own adjoining David H. Sharpe, west of White River, and one hundred dollars to make her part of the real estate equal. And Casandra Coil, my daughter, to have the tract of land which Thomas Todd now lives on with the exception of one half of the rents and profits of said tracts to go to the benefit of Sabina Coil until Casandra Coil becomes of age. And I direct that Sally Ann, a daughter of the within named Phoebe Coil to have one hundred dollars out of my personal estate. And the balance of my property either real or personal to be equally divided among my heirs."

Executors were nominated who qualified and settled the estate finally on June 2, 1848.

Said testator left surviving him the following children: Phoebe, a daughter, intermarried with Michael

Miller; Jacob Coil, Jr., a son; Sabina Coil, a daughter; and Casandra, a daughter, intermarried with Jacob Swartz Mustard, November 7, 1846. The real estate involved in this proceeding is all included in the real estate devised to Casandra Coil Mustard. Upon the death of Jacob Coil, the respective devisees went into actual possession of the real estate devised to them respectively, and held, occupied and claimed the same as the absolute owners in fee simple respectively, and thereafter disposed of the same by sale and warranty deeds. Casandra continued to hold, occupy and claim her tract, including the land here involved, under claim and color of title and ownership in fee simple continuously until April 17, 1882, when she conveyed the fee thereof, her husband Jacob S. Mustard, joining, by warranty deed to James Bridges and Mary H. Bridges, and, by successive warranty deeds, conveying the fee simple, the title of the tract involved was finally vested in appellees Indiana Concretile Company and John A. George.

That the successive grantees and each of them entered into the actual possession of the real estate conveyed to them by their respective deeds upon the execution of said deeds, paid all the taxes upon said property due under their respective tenures of occupancy, and continued to hold the same under a claim and color or right, title and ownership in fee simple until they made conveyances respectively. Each of said persons held under said claim and color of right, title and ownership continuously, notoriously, adversely and exclusively, and each of said grantees paid a valuable consideration for his or its respective real estate acquired.

Appellees now claiming to own the land involved, after going into possession thereof, made valuable and lasting permanent improvements thereon by erecting buildings and structures thereon.

Prior to bringing this action, none of appellants made any claim to any of appellees that they or any of them had any right, title or interest in any of said real estate, and, prior to the commencement of this action, made no demand upon any of appellees for possession of any of said real estate.

Appellants Coil are sons of Jacob Coil, Jr., who was a devisee under the said will.

Appellants William J. Coil, James A. Mustard and Minnie Johnson removed from the State of Indiana in the year 1875 and have ever since been non-residents.

Casandra died intestate, September 21, 1920, leaving surviving her her two children, appellants Mustard and Johnson.

Appellants were, at the death of Casandra Mustard, and now are the only surviving heirs of Jacob Coil, who died testate on December 8, 1837.

Appellee Schetter is not now, or at the time of filing the complaint, in possession of the real estate described therein or any portion thereof.

As conclusions of law upon the foregoing facts, the court states: that the law is against the appellants and with appellees.

On these findings and conclusions of law, two questions are presented for our consideration, namely: Did the devise by Jacob Coil to Casandra Coil vest in her a life estate only, or did it vest in her a fee simple title? Have the appellees who are the present owners of said land, acquired a fee simple title thereto by adverse possession, under color of title for the statutory period of twenty years before the commencement of this action?

Appellants contend that the devise is of but a life estate, and that the record does not show a title by adverse possession, while appellees contend that the

1. devise is of a title in fee simple, and also contend that appellees have acquired a fee simple

title by color of title and twenty years adverse posses-
sion. Appellants rely upon the common-law rule that
a devise of land generally, and without words indicating
the character of the estate devised, carries but a life
estate. We are not unmindful of this common-law rule,
and that it is the law of this state, adopted from the
English common law, unless modified by statute, or by
other rules of construction. At the time of the execu-
tion of the will here involved, and at the time that it
became effective, there was no statute in any way modi-
fying the common-law rule. But it has been repeatedly
held by the Supreme Court of this state that the con-
trolling rule of construction is that the testator's in-
tention shall prevail notwithstanding the common-law
rule. Authorities to this effect are: *Skinner* v. *Spann,
Exr.* (1911), 175 Ind. 672, 93 N. E. 1061, 95 N. E. 243;
*Korf* v. *Gerichs* (1896), 145 Ind. 134, 44 N. E. 24; *Mills*
v. *Franklin* (1891), 128 Ind. 444, 28 N. E. 60; *Morgan*
v. *McNeely* (1891), 126 Ind. 437, 26 N. E. 395; *Patter-
son* v. *Nixon* (1881), 79 Ind. 251; *Roy* v. *Rowe* (1883),
90 Ind. 54.

In the last case cited, the court, speaking of the
common-law rule, says:

"The old rule that a general devise of real estate,
merely describing the property, without defining the in-
terest to be taken by the devisee, gives only an estate
for life, which was abolished in England by 1 Vic. Ch.
26, and which has been abolished in many of our States,
is in force in this State, though it was abolished here
from 1843 to 1853. See R. S. 1843 p. 485, section 5;
*Cleveland* v. *Spilman,* 25 Ind. 95; *Smith* v. *Meiser,* 51
Ind. 419.

"This rule often operates in contradiction of the rule
that the testator's intention shall prevail, especially in
the case of wills made by persons unskilled in the law;
for the common mind will usually suppose that a general

devise, without limitation, carries the whole estate of the testator.

"Therefore, if the will contain any expression, in addition to the general devise, indicating an intention to pass a fee simple, the court will use this to bear out the intention; though it must in some way affirmatively appear, courts are easily satisfied that an estate of inheritance was intended. *Cleveland* v. *Spilman, supra.* They are always ready to adopt any plausible excuse for rescuing particular cases from the wrong direction which the general rule would give them. 2 Redf. Wills, 327."

From the reading of the whole will involved, it is apparent that it was the intention of the testator to dispose of his whole estate. In the introductory part thereof, he used the following language: "And as to such worldly estate as it has pleased God to entrust me with, I dispose of the same in the following manner, to-wit": thereby manifesting an intention to dispose of the whole estate, both personal and real. But with appellants' construction, there would have been remainders following each of the life estates to his children, except Phoebe, undisposed of, for it is manifest that the item of the will naming executors thereof did not undertake in directing them to distribute the balance of his property among his heirs, to include therein the remainders after the death of the respective devisees, some of whom were then little children.

It is a rule of law in the construction of wills, to adopt such construction if possible, as will avoid partial intestacy. *Skinner* v. *Spann, Exr., supra; Myers* v. *Carney* (1908), 171 Ind. 379, 86 N. E. 400; *Billings* v. *Deputy* (1925), *ante* 248, 146 N. E. 219; *Gibson* v. *Brown* (1915), 62 Ind. App. 460, 113 N. E. 13.

It is to be observed that by the terms of the will, both

real and personal property were disposed of, and that, along with a part of the devises and in connection 3-7. therewith, there was a bequest of personal property in the same general terms, which always gives absolute title to personal property. In the construction of a will that disposes of both personal and real property in general terms, where both are disposed of in substantially the same language, the presumption will be indulged that the testator intended to give all the title that he had in the real estate as well as in the personal property. *Heilman* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310; *Mulvane* v. *Rude, Exr.* (1896), 146 Ind. 476, 45 N. E. 659; *Gibson* v. *Brown, supra; Greiner* v. *Heins* (1921), 75 Ind. App. 482, 131 N. E. 20. But we do not need to give the construction of the will here involved further consideration, for there is another principle of law suggested by the second question, well established, against which appellants cannot prevail. It appears by the special findings that each of the successive grantees entered into the actual possession of the real estate conveyed to him under a claim of ownership in fee simple, and that they held the same successively, continuously, notoriously, adversely and exclusively, and that each paid a valuable consideration for the real estate so acquired. We may add that there is ample evidence to sustain such finding. This was sufficient at the end of twenty years of such adverse holding, to confer a title in fee simple, regardless of the provisions of the will. *May* v. *Dobbins* (1906), 166 Ind. 331, 77 N. E. 353; *Roots* v. *Beck* (1887), 109 Ind. 472, 474, 9 N. E. 698; *Swanson* v. *New York, etc., R. Co.* (1925), 83 Ind. App. 580, 149 N. E. 353. Nor does the fact of nonresidency in this state prior to and continuously since the time, 1882, when Casandra conveyed the land prevent the running of the statute of limitations (§302, cl. 6, Burns 1926), for it is not shown that such non-

resident appellants were within the disability statute (§305 Burns 1926) as the word "disability" is defined by §900 Burns 1926. See, also, *Smith* v. *Bryan* (1881), 74 Ind. 515; *Terre Haute, etc., Traction Co.* v. *Reeves* (1915), 58 Ind. App. 356. And as they are plaintiffs and not defendants, §306 Burns 1926 has no application.

As to appellee Louis F. Schetter, it appears by the findings and the evidence that he does not own any part of the real estate in controversy, but that his wife, Edith R. Schetter, is the owner of a part thereof. She is not a party to this action. The court did not err in its conclusions of law.

Under their motion for a new trial, appellants complain that the court erred in admitting in evidence certain deeds. But there was no error in this.

8.  These deeds were the deeds of the successive owners of the land, and, as such, a part of the chain of title, and along with appellees' oral evidence of adverse holding, were a part of appellees' legitimate defense. There was ample evidence to sustain the findings of the court.

Judgment affirmed.